**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**BROWNING–FERRIS INDUSTRIES OF LOUISVILLE, INC., d/b/a Indiana Home Sanitation, Respondent.**

No. 85–2964.

United States Court of Appeals, Seventh Circuit.

Argued May 13, 1986.

Decided Oct. 15, 1986.

Karen Ward, N.L.R.B., Washington, D.C., for petitioner.

Susan J. Piller, Browning-Ferris Industries, Inc., Houston, Tex., for respondent.

Before WOOD, COFFEY, and FLAUM, Circuit Judges.

FLAUM, Circuit Judge.

The National Labor Relations Board, pursuant to section 10(e) of the National Labor Relations Act, seeks enforcement of a bargaining order it issued against the respondent company. The Board issued the order after the company refused to bargain collectively with Teamsters Local 783, which had been certified by election as the employees' collective bargaining representative. The company contends that the union's certification was invalid because it allegedly engaged in improper conduct affecting the election. Our review of the Board's proceedings reveals that the Board's decision to overrule the company's objections to the election conduct was based on substantial evidence, and we therefore enforce the Board's order.

I.

Browning-Ferris Industries is engaged in the collection and disposal of solid wastes. The union sought to represent the company's drivers, and on August 10, 1984, the Board conducted an election among the drivers in response to the union's petition. The secret ballots revealed that of eighteen employees, ten voted in favor of the union's representation and eight voted against representation. The company filed objections to the following conduct that it claimed had improperly affected the results of the election:

1. Prior to the election and throughout the organizing campaign, the union improperly induced employees to vote for the union by threatening the physical well-being of employees and their families.

2. Prior to the election and throughout the organizing campaign, the union improperly induced employees to vote for the union by telling them that if they signed an authorization card prior to the election, all or part of the standard union initiation fee would be waived.

3. Immediately prior to the election, the union improperly induced and/or coerced employees in the exercise of their rights guaranteed by Section 7 of the National Labor Relations Act by engaging in misrepresentations of a material nature to which the company did not have an adequate opportunity to respond.

4. During the voting, employees were intimidated by the persistent presence in the voting area of a known union supporter who refused to leave the area.

5. By this and related conduct [participation of a supervisor in the election campaign], the union interfered with the election and the results of the election must be set aside.

The Board's Regional Director conducted an investigation of these objections and issued a report to the Board in September 1984. In his report, the Director concluded that the company's evidence was insufficient to warrant an evidentiary hearing or to invalidate the election, and he recommended to the Board that the company's objections be dismissed. The company then filed exceptions to the Director's report with regard to its first, fourth, and fifth objections, and made no exceptions to the Director's recommendation concerning the second and third objections. In November 1984 the Board adopted the findings and recommendations of the Director, dismissed the company's remaining three objections, and held that a certification of representative should issue. The company's continued refusal to bargain with the union resulted in a complaint in April 1985, and a three-member panel of the Board held that the refusal constituted a violation of sections 8(a)(5) and (1) of the NLRA. The Board then ordered the company to bargain with the union, and this enforcement proceeding followed.

## II.

■ Our review of the Board's decision to certify a collective bargaining representative following an election is "extremely limited." *NLRB v. Tom Wood Datsun, Inc.*, 767 F.2d 350, 352 (7th Cir.1985); *see*

also, e.g., *Mosey Manufacturing Co. v. NLRB*, 701 F.2d 610, 614 (7th Cir.1983) (en banc). We will defer to the Board's selection of rules and policies to govern a particular election so long as those rules are reasonable, *Tom Wood Datsun*, 767 F.2d at 352, and we will review the application of those rules according to the "substantial evidence" standard. *NLRB v. Affiliated Midwest Hospital, Inc.*, 789 F.2d 524, 527 (7th Cir.1986); *Mosey*, 701 F.2d at 615. Since we presume that the Board's decision was fair, the party challenging the decision bears the burden of demonstrating that the decision was not based on substantial evidence. *Tom Wood Datsun*, 767 F.2d at 352. In the context of a challenge to an election, the challenging party "must establish that there is not substantial evidence supporting the conclusion that any election irregularities or misconduct did not 'so impair the integrity of the ballot result that invalidation of the election is necessary.' " *Affiliated Midwest Hospital*, 789 F.2d at 528 (quoting *NLRB v. Southern Health Corp.*, 514 F.2d 1121, 1123 (5th Cir.1975)). We will review each of the company's three objections to the election in order to determine whether it has demonstrated that the Board's decision to overrule those objections was not based on substantial evidence.

■ A. *Threats.* The Regional Director accepted as true the company's charge that two employees had been threatened by pro-union employees, but he found that the two incidents "did not create the type of fearful climate which the Board or the courts have found to be grounds for setting aside an election." The Director based his conclusion on several factors. One concerned the timing of the first threat, in which one employee allegedly warned another that he would "bust [the second employee's] head" for not voting in favor of the union. This threat occurred more than two months before the election and a month even before the union's petition for representation was filed. The Director noted that the threat had not been made during the "critical period" between

the filing of the petition and the election, *Ideal Electric and Manufacturing Co.*, 134 NLRB 1275 (1961), and therefore that it was unreasonable to assume that any atmosphere of coercion that may have arisen had carried forward to the election. The Director's conclusion in this regard was further buttressed by the fact that these same two employees continued to have a friendly relationship in the months leading up to the election, and that the threatening employee made no further coercive remarks.

The Director also relied on the fact that the second threat, uttered the day of the election, was "vague and subject to more than one interpretation." The incident involved two employees, one telling the other that he had "better vote for the union." The Director found that, while the statement could have been interpreted as a threat, it also could have meant that the employee would be benefited by union representation. The Director concluded therefore that the statement was "unlikely ... to affect the results of the election."

Other factors that contributed to the Director's conclusion included the fact that neither of the remarks could be attributed to the union or its agents and so were accorded "less weight," *Tuf-Flex Glass v. NLRB*, 715 F.2d 291, 296 (7th Cir.1983), and the fact that the remarks were isolated from each other and did not indicate a pattern of intimidation or an atmosphere of coercion. Finally, the Director pointed out that these statements were "unaccompanied by other threats or acts of violence" and therefore that they did not "rise to the level found objectionable in the cases cited by the employer."

We find that, based on all of these factors, the Director's decision and the Board's affirmance of that decision were based on substantial evidence. Moreover, the company failed in the administrative proceedings to carry its burden of producing specific evidence of "coercive conduct [that] so influenced potential voters that free choice was impossible," *NLRB v. Chicago Marine Containers, Inc.*, 745 F.2d 493, 500 (7th Cir.1984), most particularly by failing to put into the record any evidence suggesting that other employees knew of the two threatening statements, or that a coercive atmosphere arose as a result of the statements. Since the evidence of threats that the company *did* put before the Director was accepted as true, we can only conclude that the company has not sufficiently demonstrated that the decision to overrule its first objection was unsupported by substantial evidence.

■■■ B. *Presence of Union Supporter in Voting Area.* NLRB policies prohibit electioneering, and the Board will set aside an election if a party demonstrates that there were "prolonged conversations between representatives of any party to the election and voters waiting to cast ballots." *Milchem Inc.*, 170 NLRB 326 (1968); see also, e.g., *L.C. Cassidy & Son, Inc. v. NLRB*, 745 F.2d 1059, 1062 (7th Cir.1984). Moreover, once the challenging party has met this burden of proof, the Board will not inquire into the nature of the voting area conversations. *L.C. Cassidy*, 745 F.2d at 1062. The company here proffered evidence to the Director indicating that after one of the pro-union employees had voted and left the voting area, he returned and stood by the voting booth where other employees were waiting to vote. The evidence demonstrated, however, that the employee was not a "representative of any party," that he did not speak to any of the other employees, and that after a few minutes he left, immediately after a Board representative asked him to do so. Moreover, other witnesses testified that the employee had returned to use a vending machine in the area. Based on this record, we agree that the company failed to provide evidence of electioneering sufficient to overturn the election, and we hold therefore that the decision to overrule the company's objection was based on substantial evidence.

■■ C. *Participation of Alleged Supervisor in Campaign.* The NLRB may set aside an election because of pro-union conduct by supervisors, if the challenging

party demonstrates either that (1) "employees are led to believe, because of the supervisor's activities, that the employer favors the union," or (2) "employees may be coerced into supporting the union out of fear of future retaliation by the pro-union supervisor." *NLRB v. Howard Johnson Motor Lodge*, 705 F.2d 932, 934 (7th Cir. 1983). The company's objection was based only on the second of these possibilities, and in support of its objection it presented evidence that one of its alleged supervisors, Eugene Guerin, commented to employees that if they were going to talk about the union, they had better keep it among themselves, and that since "they had started it, they had best finish it." On a second occasion Guerin supposedly remarked that he would support the union and that he hoped the union would win.

■ The Director accepted as true the company's claim that these statements had been made, but found that the company had not demonstrated that employees may have been coerced into supporting the union because of fear of reprisals. The Director's decision had several bases. First, the Director noted that although Guerin had been invested with the title of "route supervisor," he had been stripped of some of his "supervisory indicia" and eventually laid off before the election. Immediately before his layoff, the Director found, Guerin "was performing the duties of a bargaining unit driver during most of his working hours." Thus, Guerin was at most a low-level supervisor (there were at least two levels higher than his), if he could be deemed a supervisor at all for these purposes. The Director declined to decide whether Guerin technically was a supervisor, however, and treated the low level of his supervisory status as but one factor in the decision to overrule the company's objection. The other bases for the Director's decision were that the employees were unlikely to have been coerced into voting for the union by Guerin's statements, given his low level status and the absence of threats of retaliation, and the fact that Guerin's statements, if they had any impact, actually were more likely to make the employees

vote *against* the union for fear of *employer* reprisals.

The record leads us to conclude that the decision to overrule the company's objection was based on substantial evidence. The company failed to introduce any evidence suggesting that the employees interpreted Guerin's remarks as threats, that they feared reprisals from him, or even that Guerin was an active union supporter. The evidence that it presented falls short of rising to the level that has supported overturning other elections and fails to establish an interference with employee free choice. The Board's decision therefore was based on substantial evidence.

### III.

Our review of the company's above three objections revealed that it did not demonstrate that the Board lacked substantial evidence on which to overrule the objections. The company makes several other claims on appeal, however, to which we now turn.

■ A. *The Small Size of the Unit and the Cumulative Impact of the Conduct.* The company alleges that the Board erred by not giving sufficient weight to the cumulative impact of the election conduct, particularly in light of the small size of the bargaining unit and the closeness of the election results. While the size of the unit and the closeness of the vote may be relevant considerations in determining whether free choice was interfered with, *NLRB v. Southern Health Corp.*, 514 F.2d 1121, 1125 (7th Cir.1975), neither fact is sufficient to raise a presumption that the conduct had an impact on the election results. *Id.* It has been held that the cumulative impact argument "may not be used to turn a number of insubstantial objections to an election into a serious challenge." *Amalgamated Clothing & Textile Workers v. NLRB*, 736 F.2d 1559, 1569 (D.C.Cir.1984). The challenging party must at the very least demonstrate conduct that is legally actionable in its component parts *or* "offer the Board detailed evidence of the pattern

the activity formed and its influence on the election." *Melrose-Wakefield Hospital Association v. NLRB*, 615 F.2d 563, 570 (1st Cir.1980). The company here has done neither: the isolated instances of improper conduct were properly found to be insufficient to overturn the election, and the company offered nothing specific to establish a pattern of conduct that could have influenced the vote. In the absence of this kind of specific evidence, the Board had a substantial basis for concluding that the cumulative impact of the conduct was not sufficient to warrant overturning the election.

B. *The Board's Refusal to Grant the Company a Hearing.* The Board's policy is to grant a challenging party an evidentiary hearing on its objections only where the party raises "substantial and material factual issues and proffers evidence that establishes a prima facie case for setting aside an election." *L.C. Cassidy & Son, Inc. v. NLRB*, 745 F.2d 1059, 1064 (7th Cir.1984). As we indicated in our discussion above, the company did not come forward with evidence that established a prima facie case for setting aside the election. Moreover, it failed to raise substantial and material factual issues since the Director accepted as true all of the evidence it offered, even the controverted evidence. The company's only assertion was that the hearing should have been held in order to determine whether the conduct it complained of had an impact on the election. Its failure was that it could not offer any evidence that indicated such an impact was likely. In the absence of this kind of evidence, we cannot conclude that the Board's decision to deny a hearing was unreasonable. While we are sympathetic to the company's difficulties in gathering evidence, we must also remain mindful of the desirability of "quick and conclusive election results." *Orleans Manufacturing Co.*, 120 NLRB 630, 639 (1958). For this reason, we have recognized that an *ex parte* investigation "is deemed sufficient, indeed preferable, in that it precludes the opportunity for protracted delay." *Louis-Allis Co. v. NLRB*, 463 F.2d 512, 520 (7th Cir.1972). Therefore, because the company failed to raise substantial and material factual issues, we hold that it was not entitled to a hearing.

■ C. *The Board's Review of Evidence.* The company contends that enforcement of the Board's order should be denied because of our *"per se* rule under which the Board can never adopt the findings and recommendations of a Regional Director without first reviewing the affidavits produced by the Regional Director's investigation on which he based his conclusions." *Prairie Tank Southern v. NLRB*, 710 F.2d 1262, 1266–67 (7th Cir.1983). The Board in this case had before it the affidavits that the company proffered to the Director, but not the affidavits that the Director himself obtained. Board regulations make clear, however, that all witness statements are not part of the record that is forwarded from the Director to the Board. 29 CFR § 102.69(g)(*l*)(ii). Thus, parties are "on notice that the affidavits received in the Regional Director's administrative investigation are not part of the record, and that it is the responsibility of the objecting party to file supporting affidavits with the Board." *L.C. Cassidy*, 745 F.2d at 1065. While we agree that the company may have been uncertain as to how it could file with the Board affidavits that it may not have had access to, it should have raised its concern before the Board at its first opportunity, in other words in the underlying certification proceeding, rather than waiting until a subsequent stage, i.e. the unfair labor practice proceeding. *See, e.g., NLRB v. Affiliated Midwest Hospital, Inc.*, 789 F.2d 524, 533 (7th Cir.1986). Because it declined to do so, we conclude that the issue has been waived. *Id.*

For the above reasons, the Board's application for enforcement is GRANTED.