VAN LEER CONTAINERS, INC.,
Petitioner, Cross–Respondent,

v.

NATIONAL LABOR RELATIONS
BOARD, Respondent,
Cross–Petitioner.

Nos. 86–1799 & 86–2002.

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 10, 1987.

Decided March 15, 1988.

Charles E. Murphy, Murphy, Smith & Polk, Chicago, Ill., for petitioner, cross-respondent.

Linda Dreeben, NLRB (Elliott Moore—NLR), Washington, D.C., for respondent, cross-petitioner.

Before WOOD, and RIPPLE, Circuit Judges, and GORDON, Senior District Judge.*

* The Honorable Myron L. Gordon, Senior District Judge for the Eastern District of Wisconsin, is sitting by designation.

1. The Act provides:
    It shall be an unfair labor practice for an employer—

HARLINGTON WOOD, Jr., Circuit Judge.

Employees of Van Leer Containers, Inc. (Van Leer) voted to have the United Steelworkers of America, AFL–CIO (Union) serve as their bargaining representative. Van Leer refused to bargain with the Union, claiming improprieties in the election process. The National Labor Relations Board (Board) overruled Van Leer's objections and found that Van Leer had violated sections 8(a)(1) and (5) of the National Labor Relations Act (Act)[1] by refusing to bargain with the Union. Van Leer filed a petition with this court to obtain review of the Board's decision. The Board cross-petitioned for enforcement of its order.

## I. BACKGROUND

Inland Steel Container Company (Inland) operated a steel drum manufacturing plant in New Orleans, Louisiana. Employees at the New Orleans plant were represented by the Union. In November 1982, Inland decided to close its New Orleans plant, and informed the employees and the Union of its decision. On December 20, 1982, Inland exercised an option to purchase a building and land in Canton, Mississippi, for the purpose of relocating its steel drum operations. In discussions with the Union, Inland maintained that the New Orleans employees had no contractual transfer rights entitling them to jobs in Canton. On May 17, 1983, the Union filed an unfair labor practice charge with the Board. The Union alleged that Inland's relocation of the New Orleans plant without the Union's consent constituted an unlawful refusal to bargain, resulting in the New Orleans employees permanently losing their jobs. The Union claimed that, by its actions, Inland had violated sections 8(a)(1), (3), (5), and 8(d) of the Act.

    (1) to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in section 157 of this title;
    . . . .
    (5) to refuse to bargain collectively with the representatives of his employees, subject to the provisions of section 159(a) of this title.
29 U.S.C. § 158(a)(1), (5) (1982).

Despite the pending unfair labor practice proceeding, the New Orleans plant closed in September 1983 and was relocated to Canton in October 1983. Inland later sold its Canton container operations to Van Leer. On October 10, 1984, the Union filed a petition for an election at Van Leer's Canton facility.

Hubert Coker, an International Representative of the Union, led the organizing activity at Van Leer's Canton plant on behalf of the Union. At an organizational meeting, Coker allegedly referred to the Union's pending unfair labor practice charge against Inland, mentioning the possibility of New Orleans workers taking the Canton employees' jobs. The pending New Orleans litigation also received extensive coverage in the local Canton press. Four days before the election, Coker mailed a letter to eligible voters, outlining the Union's view on the consequences of the upcoming election.[2]

On election day, Coker spoke to an employee, Jamie Squires, on her way to the polls to vote. According to Squires's version, Coker told her and her companions to vote for the Union. Squires replied that "if you vote for the Union, you will be on welfare." Coker retorted that if Squires voted for the Union, she would indeed be on welfare, because John Lane, a Van Leer supervisor, would return to Chicago, leaving Squires all alone. (Coker apparently believed that there was a personal relationship between Squires and Lane.) Squires proceeded to the polling area, where she voted. Upon leaving, Squires again passed Coker and approached him. Squires asked Coker to repeat what he had said earlier.

Coker told her that she was going to need help, because she wouldn't have anything when Lane returned to Chicago. Squires then called Coker a few profane names, and Coker returned the courtesy. Other employees witnessed the exchange between Coker and Squires.

Coker engaged in further activity around the polls on election day. That day, the Union had prepared and distributed a handbill to employees that listed the names of fifty-six of the eighty-nine eligible voters and identified them as having "pledged their support" to the Union. The handbill claimed that the Union had a large majority and urged employees to "get on the bandwagon." On the afternoon of election day, Coker stopped voter Jessie Williams and gave him a cap bearing the Union's insignia. Coker reportedly told Williams to put the cap on, but Williams declined. Coker urged Williams to wear the cap, emphasizing that Williams's name was listed on the handbill, demonstrating his support for the Union. Williams claimed that he did not put his name on the handbill, to which Coker replied that it was already on the handbill.

In addition to Coker distributing caps bearing the Union's insignia on election day, Union observers wore the Union hats at the opening of the polls and during the voting session. One Union observer placed a Union cap on the table used to check in voters and left the hat there for the duration of the election. The Board agent conducting the election did not forbid Union observers to display Union insignia in the voting area during the election.

---

2. The letter stated, in part:

The *Federal law* says the United Steelworkers of America *must* represent its members. Therefore, if a majority of Van Leer employees vote YES on Tuesday, December 4, then the *law requires* the Union to *represent you* in getting you a good decent contract in Canton, Mississippi.

If a majority of the employees vote NO and the Judge rules in favor of the Company [in the pending unfair labor practice proceeding against Inland], then you still have NO union in Canton, Mississippi.

If a majority of the employees vote YES on December 4, 1984, in Canton, Mississippi, and

if the Judge rules in favor of the Company in the suit that is pending, then the employees will be free to start negotiations for their own contract in Canton, Mississippi.

If a majority of the employees vote NO on December 4, then we will not be *legally bound* by *law* to represent the employees in Canton, Mississippi. Therefore, our sole obligation will be to the Union members in New Orleans should the Judge rule in the Steelworkers [sic] favor.

YOU BE THE JUDGE, and I hope that you will not be misled by the Company newspaper or anyone else and will vote for yourselves on Tuesday, December 4, 1984.

The Van Leer employees voted fifty-two to thirty-four in favor of the Union as their bargaining representative.

On December 11, 1984, Van Leer filed objections to conduct affecting the outcome of the election. First, Van Leer claimed that the Union had threatened employees with retaliation and/or loss of their jobs if the employees did not vote for the Union. Second, Van Leer alleged that the Union threatened employees that, unless the Union became the Canton employees' bargaining representative, the Union would attempt to secure the Canton jobs for the New Orleans employees. Van Leer also claims that the Board acted in an arbitrary and capricious manner by processing the Union's election petition and conducting the election while the unfair labor practice charge against Inland, the plant's former owner, was pending. Finally, Van Leer charged that the Union destroyed the laboratory conditions of the election by displaying Union insignia in the polling place and by other impermissible acts on election day.

The Board's Regional Director conducted an *ex parte* investigation of Van Leer's objections and issued a report on January 16, 1985. Concluding that Van Leer raised no substantial or material issues affecting the results of the election, the Regional Director recommended that the Board overrule all the objections and certify the Union.

On June 21, 1985, the Board issued its decision. A majority of the three-member panel adopted the Regional Director's findings and recommendation and certified the Union as bargaining representative for the Van Leer employees. One Board member dissented, stating that she would direct a hearing on Van Leer's objection to Union statements regarding the Canton employees' loss of jobs to New Orleans workers if the Union did not win the December 4 election.

Van Leer subsequently refused to bargain with the Union. The Union then filed an unfair labor practice charge against Van Leer. In responding to the General Counsel's complaint, Van Leer claimed that the Union's certification was invalid because of the improper election and because no hearing was held on Van Leer's election objections. The General Counsel moved for summary judgment, claiming that the issues were or could have been litigated in the prior certification proceeding. A majority of the panel granted the motion, with one member again dissenting on the grounds that Van Leer was entitled to a hearing on its second objection. Van Leer seeks review of the Board's order requiring it to bargain with the Union.[3] The Board cross-petitioned for enforcement of its order.

## II. ANALYSIS

### A. The Board's Review of the Evidence

Van Leer contends that the Board improperly failed to review the entire record and that therefore we should deny enforcement of the Board's order. This court has recognized that the Board should not adopt the findings and recommendations of the Regional Director without reviewing the affidavits upon which the Regional Director relied. *Prairie Tank Southern, Inc. v. NLRB,* 710 F.2d 1262, 1265 (7th Cir.1983); *NLRB v. Allis–Chalmers Corp.,* 680 F.2d 1166, 1169 (7th Cir. 1982).

In this case, the Board had before it all the affidavits proffered by Van Leer. The affidavits of Coker and other employee witnesses that were prepared by the Regional Director in the course of his investigation, however, were not forwarded to the Board. According to Board regulations, witness statements are not included as part of the record. 29 C.F.R. § 102.69(g)(1)(ii)

3. The National Labor Relations Act does not generally provide for direct review of Board certification proceedings. Once the Board enters a compulsory order, such as a bargaining order, however, a party may seek judicial review of that order. The challenging party then may also seek judicial review of the certification proceeding underlying the bargaining order. 29 U.S.C. § 159(d) (1982); *see State Bank of India v. NLRB,* 808 F.2d 526, 529 & n. 5 (7th Cir.1986), *cert. denied,* —— U.S. ——, 107 S.Ct. 3229, 97 L.Ed.2d 735 (1987); *Peerless of Am., Inc. v. NLRB,* 576 F.2d 119, 121 (7th Cir.1978).

(1987) ("the record shall consist of ... any documentary evidence, *excluding statements of witnesses,* relied upon by the regional director in his decision or report") (emphasis added). An objecting party may append to its exceptions to the Regional Director's decision copies of affidavits "it has timely submitted to the regional director and which were not included in the report or decision." *Id.* § 102.69(g)(3). Thus, parties are on notice that the affidavits generated by the Regional Director's investigation are not part of the record, and that the objecting party has the responsibility to file such affidavits with the Board. *L.C. Cassidy & Son, Inc. v. NLRB,* 745 F.2d 1059, 1065 (7th Cir.1984). Van Leer was on notice of this duty to transmit any affidavits it wanted the Board to review when considering the Regional Director's report. Van Leer thus should have known that the affidavits that Van Leer did not append to its exceptions, despite the fact that Van Leer did not have access to those affidavits, would not be before the Board. Yet Van Leer did not object or raise the issue of an incomplete record during the Board's certification proceeding. In *NLRB v. Browning–Ferris Industries of Louisville, Inc.,* 803 F.2d 345 (7th Cir.1986), we stated:

> While we agree that the company may have been uncertain as to how it could file with the Board affidavits that it may not have had access to, it should have raised its concern before the Board at its first opportunity, in other words in the underlying certification proceeding, rather than waiting until a subsequent stage, i.e. the unfair labor practice proceeding. *See, e.g., NLRB v. Affiliated Midwest Hospital, Inc.,* 789 F.2d 524, 533 (7th Cir.1986). Because it declined to do so, we conclude that the issue has been waived. *Id.*

*Browning–Ferris,* 803 F.2d at 350. Likewise, we must find that Van Leer's argument concerning the incomplete record was waived when it delayed raising the issue until the General Counsel moved for summary judgment during the unfair labor practice proceeding.[4]

---

4. Van Leer also contends that both 28 U.S.C. § 2112(b) and the Administrative Procedure Act required the Board to review all the affidavits that the Regional Director generated in his investigation.

Van Leer argues that 28 U.S.C. § 2112(b) requires that affidavits used as the evidentiary basis of Regional Director or Board decisions must be part of the record available to this court in its review of those decisions. *See NLRB v. Klingler Elec. Corp.,* 656 F.2d 76, 84 (5th Cir.1981). Because the Regional Director purportedly assumed the truth of Van Leer's evidence and found that Van Leer failed to establish substantial objections, the affidavits generated by the Regional Director's *ex parte* investigation were not the "evidentiary basis" of the Regional Director's or the Board's decision. Nevertheless, courts have held that if a reviewing court assumes the truth of the challenging party's allegations, the fact that the Board did not transmit a full record is harmless error. *See NLRB v. West Coast Liquidators, Inc.,* 725 F.2d 532, 535 n. 2 (9th Cir.1984) (incompleteness of record requires court to construe employer's well-pleaded factual assertions in the most favorable light); *Kitchen Fresh, Inc. v. NLRB,* 716 F.2d 351, 358 (6th Cir.1983) (same); *NLRB v. Advanced Sys., Inc.,* 681 F.2d 570, 575 (9th Cir.1982) (same); *cf. NLRB v. Knickerbocker Food, Inc., A Div. of Knickerbocker Meats,* 715 F.2d 509, 512 (11th Cir.1983) (review of the record is unnecessary where employer has not come forward with sufficiently specific facts to require a hearing). In reviewing the Board's decision, we have therefore assumed the truth of Van Leer's factual allegations.

Section 556(d) of the Administrative Procedure Act provides that an order may not be issued "except on consideration of the whole record." 5 U.S.C. § 556(d) (1982). Van Leer argues that the Board violated this section by reaching a decision without reviewing the affidavits generated by the Regional Director in conducting his investigation. Section 556, however, applies only to hearings required by section 554. Section 554 excludes proceedings involving the certification of worker representatives. *Id.* § 554(a)(6). Although we may effectively be reviewing the Board's decision to certify the Union following the election, this case is actually an unfair labor practice proceeding. We need not decide whether the § 554(a)(6) exception applies to this case, however, because we have before us all the evidence considered by the Regional Director in reaching his decision. Because the Regional Director claimed to have assumed the truth of Van Leer's allegations, our review of the Board's decision is limited to determining whether, assuming the truth of Van Leer's evidence and allegations, substantial evidence supported the Board's decision to overrule Van Leer's objections. *See West Coast Liquidators,* 725 F.2d at 535 n. 2; *Kitchen Fresh,* 716 F.2d at 358; *cf. Bethlehem Steel Corp. v. United States Environmental Protection Agency,*

784

## B. The Board's Refusal to Grant an Evidentiary Hearing

■ Van Leer claims that the Board erred in overruling Van Leer's objections to the election. Alternatively, Van Leer asserts that the Board should have at least granted an evidentiary hearing on the objections. Appellate review of the Board's decision to certify a collective bargaining representative following an election is extremely limited. *Browning–Ferris*, 803 F.2d at 347; *NLRB v. Tom Wood Datsun, Inc.*, 767 F.2d 350, 352 (7th Cir.1985). We must defer to the Board's reasonable selection of rules and policies to govern the election, and we will uphold the application of those rules if substantial evidence supported the Board's decision. *Browning–Ferris*, 803 F.2d at 347. The party challenging the election has the burden of establishing that substantial evidence does not support the Board's decision. *Id.; NLRB v. Affiliated Midwest Hospital, Inc.*, 789 F.2d 524, 527–28 (7th Cir.1986); *Tom Wood Datsun*, 767 F.2d at 352.

■ A party challenging a representation election is entitled to an evidentiary hearing where its objections raise substantial and material issues of fact and the objecting party proffers evidence that establishes a prima facie case for setting aside an election. *Browning-Ferris*, 803 F.2d at 350; *L.C. Cassidy*, 745 F.2d at 1064; *cf.* 29 C.F.R. § 102.69(d) (1987). In reviewing the Board's decision not to grant an evidentiary hearing on Van Leer's objections, we must consider whether substantial evidence supported the Board's determination that Van Leer did not present a prima facie case for setting aside the election. *Affiliated Midwest Hospital*, 789 F.2d at 527; *NLRB v. Chicago Marine Containers, Inc.*, 745 F.2d 493, 496 n. 2 (7th Cir.1984).

### 1. Union's Alleged Election Day Misconduct

The Regional Director concluded that Coker did not threaten or coerce Squires in his conversation with her on election day. This court has held that "the Board may not rely on an ex parte investigation to rebut substantial allegations that, if true, might warrant setting aside the election." *NLRB v. Howard Johnson Motor Lodge*, 705 F.2d 932, 934 (7th Cir.1983). In his report, the Regional Director quoted extensively from Coker's affidavit, an affidavit that was a product of the Regional Director's *ex parte* investigation and not a part of the record before the Board. After reviewing Coker's affidavit and the affidavits of several employee witnesses, the Regional Director found that the alleged threat of retaliation was "highly implausible" in the context suggested by Squires. Thus, it appears that the Regional Director may have been relying on his *ex parte* investigation, at least in part, to rebut Squires's allegations of election misconduct. Nevertheless, the Regional Director's report concludes: "Even assuming arguendo that the statements attributed to Coker by [Squires] were made, they were neither threatening nor coercive." Thus, we cannot say that the Regional Director did not assume the truth of Squires's statement in reviewing the evidence. Because the Regional Director accepted as true the evidence proffered by Van Leer, Van Leer is not entitled to an evidentiary hearing on this issue. *Browning–Ferris*, 803 F.2d at 350.

■ The Regional Director also noted that the comments allegedly made by Coker were de minimis and isolated. A party seeking to overturn an election because of coercive conduct must show that " 'the coercive conduct so influenced potential voters that free choice was impossible.' " *Chicago Marine Containers*, 745 F.2d at 500 (quoting *NLRB v. Advanced Systems, Inc.*, 681 F.2d 570, 575 (9th Cir.1982)). Van Leer failed to introduce any evidence that any employees other than Squires could reasonably have interpreted Coker's statements as threats. The statements regarded Squires's personal relationship with a

638 F.2d 994, 1000 (7th Cir.1980) (court suggested in dictum that where a party is solely challenging an agency's decision, only evidence that

was considered by the agency need be included in the record).

supervisor, and were not directed to any other employees. In addition, this was not a particularly close election, and only five employees heard the remarks. Van Leer has not presented any evidence that other employees knew of the statements. Finally, the remarks were ambiguous and subject to varying interpretations. As the Regional Director pointed out, Coker's alleged remarks seemed to suggest that Squires would be on welfare if she voted *for* the Union, a statement that would not convince, much less coerce, an employee to vote for the Union. *See Browning–Ferris,* 803 F.2d at 348 (vague statement unlikely to affect result of an election).

We believe that the Regional Director properly found that the conversation between Coker and Squires had little coercive effect on the general atmosphere of the election. Unlike the cases involving threats of retaliation that Van Leer has cited, the evidence here does not establish interference with employee free will such that the election should be overturned. *See, e.g., EDS–IDAB, Inc. v. NLRB,* 666 F.2d 971, 973 (5th Cir.1982) (A pro-union employee showed a fellow employee a gun and threatened: " 'If the union doesn't get in, you'll get yours after the election.' "); *United Broadcasting Co. of New York, Inc.,* 248 N.L.R.B. 403 (1980) (union steward told an employee he would be blacklisted and would not get a job if he voted against the union). The Board's decision not to grant an evidentiary hearing, but rather to overrule this objection, was therefore supported by substantial evidence.

■ The Regional Director and the Board also concluded that the Union's handbill and Coker's request for an employee to wear a Union cap were not coercive or objectionable. Van Leer does not contest the Board's determination that even if the handbill misrepresented the level of employee support, such a misrepresentation would not warrant overturning the election. Rather, Van Leer asserts that the handbill and Coker's use of it to encourage an employee to wear a Union cap had a coercive impact on employees.

Van Leer cites cases holding that a union's polling of employees regarding their union sentiments, and threats to employees who fail to publicly demonstrate their support for a union, are coercive and may warrant a hearing. Here, however, all employees listed on the handbill signed an authorization allowing the Union to use their names. Van Leer does not present any evidence that any employee who refused to accept or wear a Union cap was threatened in any way. The Board, adopting the Regional Director's report, found that the statements attributed to Coker were neither coercive nor objectionable. The Regional Director specifically noted that Coker's encouragement failed to persuade the employee to wear the cap. Van Leer does not dispute that merely encouraging employees to express their support for a union by wearing caps on election day is not objectionable conduct. *See R.L. White Co., Inc.,* 262 N.L.R.B. 575, 576 (1982) (distributing union T-shirts is permissible); *but see Owens–Illinois, Inc., Forest Products Group,* 271 N.L.R.B. 1235, 1235–36 (1984) (distributing union jackets worth $16, as opposed to T-shirts, buttons, or pins, is objectionable conduct). Because Van Leer failed to present any evidence showing that Coker's remarks were coercive or threatening, substantial evidence supported the Board's decision to overrule this objection without granting an evidentiary hearing.

*2. Union's Alleged Threats of Job Loss*

■ The Board concluded that the Union did not threaten Canton employees with the loss of their jobs if the Union lost the election. The Regional Director found that Van Leer clearly failed to present evidence that the Union threatened employees with job loss. We disagree.

Van Leer submitted employee affidavits that stated that at a Union organizational meeting, Coker told the employees that if the Union lost the election, the Union would support the New Orleans workers, with the possibility that the Canton jobs would go to the New Orleans members. According to the Regional Director's report, Coker denied suggesting that the out-

come of the election would have an effect upon the Canton employees' jobs. Instead, Coker claimed that Van Leer, not the Union, raised the issue of Inland's pending unfair labor practice proceeding. Coker claimed that his November 30 letter was a response to Van Leer's allegations and that the letter was designed to merely describe the Union's representational role. Rather than assuming the truth of the employees' statements, the Regional Director seemed to accept Coker's version of the facts.[5] This directly controverts the accepted rule that "the Board may not rely on an ex parte investigation to rebut substantial allegations." *NLRB v. Howard Johnson Motor Lodge*, 705 F.2d 932, 934 (7th Cir. 1983). *See Browning–Ferris*, 803 F.2d at 350 (hearing not necessary where Regional Director accepted as true all of the evidence the employer presented). Because the Regional Director failed to forward Coker's affidavit to the Board, we must assume the truth of Van Leer's allegations. *See NLRB v. West Coast Liquidators, Inc.*, 725 F.2d 532, 535 n. 2 (9th Cir.1984). The facts are also in dispute regarding whether the Union or Van Leer initiated the discussion of the pending Inland proceeding. Thus, it is not clear to us whether Coker's statements at the Union meeting and the November 30 letter were merely responses to allegations by Van Leer, or instead veiled threats of economic reprisals if the Union lost the election. These disputed issues of fact are clearly material and substantial in determining whether the Union's statements should reasonably be construed as tending to intimidate or coerce the employees to vote in the Union's favor.

Before the Board will grant an evidentiary hearing, a party must show not only that a substantial and material factual issue is in dispute, but that a prima facie case for setting aside the election exists.

Van Leer claims that the Union's alleged threats of economic reprisal present a prima facie case for overturning the election.

In *A. Rebello Excavating Contractors*, 219 N.L.R.B. 329 (1975), the Board set aside an election because of union threats of economic reprisals if employees did not vote for the union in the election. A union official told an employee that the employee could lose his job if he did not vote for the union. As a result of this conversation, employees feared losing their jobs. The Board found that the employees' fears were reasonable and that the union official's statement had tended to coerce and threaten the employees, thereby interfering with the conduct of a free election.

Similarly, in *United Broadcasting Co. of New York, Inc.*, 248 N.L.R.B. 403 (1980), the Board set aside a union election because the union threatened to deprive an employee of future employment in the industry by placing his name on a blacklist if he voted against the union. As in *A. Rebello*, the Board found that the proper inquiry was whether the statements reasonably tended to interfere with the free and uncoerced choice of the employees. The Board decided that a threat of future job loss was

the kind of economic reprisal which an employee may reasonably believe is within a union's power. Because the determination of whether certain conduct warrants setting aside an election does not turn on the election results, but rather on its likelihood to coerce prospective voters to cast their ballots in a particular manner, it appears that the statements attributed to [the union] herein fall squarely within the proscription. The coerciveness of a blacklist derives from the possible foreclosure of the opportunity to earn a living, and the cited threats directly tie

---

5. The Regional Director's report quoted one employee as saying: "Coker said that without a union the people in New Orleans could come up here and get our jobs if they wanted to." Nevertheless, the report also contained a statement from Coker that he "never said that the outcome of this election would have any effect upon the employment of the New Orleans Steelworkers."

The Regional Director concluded that it was clear that the Union merely explained its representational role, without presenting an implied threat of job loss. Assuming the truth of the employee's statement, we do not believe that it was "clear" that Coker did not subtly threaten the employees with economic reprisals if the Union did not win the election.

this consequence to [the employee's] vote.

*Id.* at 404 (footnote omitted).

Finally, in *Willey's Express, Inc.*, 275 N.L.R.B. 631 (1985), the Board overturned an election where the union business agent told an employee a few days before the election that unit employees were illegally covered under a trust fund. The Board found that this statement was coercive and reasonably tended to interfere with the election because the statement constituted an implied threat to employees that they would lose their current insurance coverage unless they chose union representation.

As the above cases teach, the Board has considered threats of future job loss sufficient violations to warrant setting aside an election. The Board must determine whether the statements reasonably tended to coerce employees so that their free choice was impeded. *See Affiliated Midwest Hospital, Inc. v. NLRB*, 789 F.2d 524, 532 n. 6 (7th Cir.1986); *NLRB v. Southern Health Corp.*, 514 F.2d 1121, 1123 (7th Cir.1975); *Willey's Express*, 275 N.L.R.B. at 631. Applying this standard, Van Leer has presented a prima facie case that would warrant setting aside the election. Van Leer has submitted employee affidavits alleging that the Union suggested that the employees could lose their jobs to New Orleans workers if they did not vote for Union representation. Such statements could provoke reasonable concern among employees that their jobs would be in jeopardy if they did not opt for Union representation. *See, e.g., Strawsine Manufacturing Co.*, 280 N.L.R.B. No. 63, 123 L.R.R.M. (BNA) 1270 (1986) (upon finding an employer's relocation of a plant unlawful, Board ordered that employees of the closed facility be offered employment at the new location).

The Regional Director maintained, and the Board agreed, that Coker's letter merely pointed out the Union's representational duty owed to the former Inland employees in New Orleans. Nevertheless, the Board cannot assume that the employees were aware of these fine distinctions. In *Willey's Express,* the Board found that it was inevitable for the employees to infer that the only way to keep their insurance coverage was to vote for the union. Likewise, employees here may have deduced that to retain their jobs, their only choice was to opt for Union representation. Thus, Van Leer has presented a prima facie case that the Union's alleged threats of job loss may have reasonably impaired the employees' free choice in the election.[6] Because substantial and material factual issues are in dispute, and Van Leer has proffered a prima facie case of coercion that would warrant setting aside the election, Van Leer is entitled to an evidentiary hearing on Objection 2.

### 3. Timing of the Election

■ Van Leer also objects to the Board's processing of the election petition while the unfair labor practice proceeding against Inland was pending. Van Leer claims that this was arbitrary and capricious conduct by the Board, creating an atmosphere of fear and confusion that prevented a fair and free election. Van Leer, however, neglects to discuss the stipulation that it entered into with the Union prior to the election. The stipulation set an election date, and by signing the stipulation the parties expressly waived a preelection hearing.

---

**6.** Van Leer presented evidence that Coker's alleged statements were widely disseminated to the employees both through the organizational meetings and Coker's November 30 letter. Thus, there was a real possibility that these statements might have induced the employees to believe that their jobs would be jeopardized if the Union was not successful in the election. This showing is sufficient to entitle Van Leer to an evidentiary hearing on this objection. As one court explained:

> [A]n employer is [not] required to present sufficient evidence to establish that the objec-

tions must be sustained before it can obtain an evidentiary hearing. The whole purpose for the hearing is to inquire into the allegations to determine whether they are meritorious; it makes little sense to expect the employer to prove its case ... to the Regional Director before a hearing will be granted. *NLRB v. J–Wood/A Tappan Div.*, 720 F.2d 309, 315 (3d Cir.1983). Thus, the impact of the Union's statements on the election must be determined by the Board after developing the facts at a full hearing.

*Cf. State Bank of India v. NLRB,* 808 F.2d 526, 528 n. 1 (7th Cir.1986), *cert. denied,* —— U.S. ——, 107 S.Ct. 3229, 97 L.Ed.2d 735 (1987).

Thus, Van Leer's objection is an attempt to litigate a matter that the company could have raised prior to the election. Van Leer does not contend that it was unaware of Inland's pending unfair labor practice proceeding at the time it entered into the stipulation. Therefore, by entering into the preelection stipulation with the Union, Van Leer voluntarily waived its right to litigate this issue. *See NLRB v. Speedway Petroleum, Division of Emro Marketing Co.,* 768 F.2d 151, 155 (7th Cir.1985); *Bell Manufacturing Division, Di Giorgio Leisure Products, Inc.,* 192 N.L.R.B. 570, 578 (1971), *enf'd on other grounds,* 483 F.2d 150 (9th Cir.1973); *see also Affiliated Midwest Hospital,* 789 F.2d at 533 (issues not raised at first appropriate opportunity are waived). Thus, substantial evidence supports the Board's decision to overrule Van Leer's objection to the timing of the election.

### 4. *Union Insignia in the Polling Place*

■ Van Leer contends that the display of caps bearing the Union's insignia in the polling area was objectionable conduct. However, the mere display of partisan insignia by observers during an election, without more, does not warrant setting aside an election. *NLRB v. IDAB, Inc.,* 770 F.2d 991, 999–1000 (11th Cir.1985); *EDS–IDAB, Inc. v. NLRB,* 666 F.2d 971, 976 n. 6 (5th Cir.1982); *NLRB v. Laney & Duke Storage Warehouse Co.,* 369 F.2d 859, 864–65 (5th Cir.1966); *The Nestle Co.,* 248 N.L.R.B. 732, 742 (1980), *enf'd without opinion,* 659 F.2d 252 (D.C.Cir.1981).

Van Leer insists that even though merely displaying Union insignia in the polling area may not be sufficient to overturn the election, the Board should have assessed the cumulative effect of the Union's display of insignia and the other objectionable conduct alleged. This court recently held that a party may not use a cumulative impact argument to transform a number of insubstantial objections to an election into a seri-

ous challenge. *Browning–Ferris,* 803 F.2d at 349. To present a successful cumulative impact argument, "[t]he challenging party must at the very least demonstrate conduct that is legally actionable in its component parts *or* 'offer the Board detailed evidence of the pattern the activity formed and its influence on the election.'" *Id.* at 349–50 (emphasis in original) (quoting *Melrose–Wakefield Hospital Ass'n, Inc. v. NLRB,* 615 F.2d 563, 570 (1st Cir.1980)); *see Spring City Knitting Co. v. NLRB,* 647 F.2d 1011, 1020 (9th Cir.1981). Van Leer's allegations of threats of economic reprisal by the Union and the Union's display of insignia in the polling area do not seem to constitute a *pattern* of conduct that could have influenced the vote.

■ Nevertheless, we need not decide that precise issue. On appeal to this court, Van Leer argues that the Board should have considered the display of Union insignia together with *all* objectionable conduct alleged by Van Leer. In its objections filed with the Regional Director and before the Board, however, Van Leer merely asked the Board to consider the effect of the display of insignia together with the other alleged misconduct on election day, *i.e.* the conversation between Coker and Squires, and Coker's actions in distributing Union caps. Van Leer did not argue before the Board that the cumulative impact of all four of its objections, including the threat of the Canton jobs going to New Orleans workers, warranted overturning the election. Since Van Leer chose not to raise this issue before the Board, we cannot consider it upon appeal. *See* 29 U.S.C. § 160(e) (1982) ("No objection that has not been urged before the Board, its member, agent, or agency, shall be considered by the court [of appeals], unless the failure or neglect to urge such objection shall be excused because of extraordinary circumstances."); *see also Detroit Edison Co. v. NLRB,* 440 U.S. 301, 311–12 n. 10, 99 S.Ct. 1123, 1129–30 n. 10, 59 L.Ed.2d 333 (1979). Because we agree with the Board that the objections pertaining to the election day misconduct were insubstantial, the cumulative impact of these insubstantial objections cannot suffice to set aside the election. *Browning–Ferris,* 803 F.2d at 349.

In addition, Van Leer has produced no evidence linking these isolated incidents into a general pattern of misconduct that could have influenced the election.

The Union workers' display of Union insignia in the polling area, without more, does not warrant overturning the election. Further, an evidentiary hearing on this objection is not required because there are no substantial or material facts in dispute. Finally, the Board was not required to consider the cumulative effect of the Union's alleged election day misconduct because those objections were insubstantial.

### III. CONCLUSION

Van Leer cannot complain that the record before the Board in its unfair labor practice proceeding was incomplete; Van Leer waived this issue by failing to raise it at the earlier certification proceeding. We also find that substantial evidence supported the Board's decision to overrule Van Leer's Objections 1, 3, and 4 without first holding an evidentiary hearing.[7] The Board erred, however, in failing to order an evidentiary hearing on Objection 2. There are substantial and material factual issues in dispute, and Van Leer has presented a prima facie case for overturning the election. Therefore, we deny enforcement of the Board's order, and remand this case to the Board for an evidentiary hearing on Objection 2.

ENFORCEMENT DENIED.

---

**7.** Van Leer presented an additional argument that we find lacks merit. Van Leer argued that the Board failed to adequately analyze the case by relying on the Regional Director's report. The Board stated that it had reviewed the record in light of Van Leer's objections and briefs, and had adopted the factual findings and legal reasoning of the Regional Director. After adequately reviewing the challenging party's objections, the Board may properly adopt the Regional Director's opinion as its own. *Borek Motor Sales, Inc. v. NLRB,* 425 F.2d 677, 681–82 (7th Cir.), *cert. denied,* 400 U.S. 823, 91 S.Ct. 45, 27 L.Ed.2d 52 (1970) (Board does not violate § 557(c) of the Administrative Procedure Act by summarily adopting examiner's opinion); *NLRB v. Process Corp.,* 412 F.2d 215, 217 (7th Cir.1969) ("While a more extended discussion might be the better practice, the Board did state that it had reviewed the Hearing Officer's rulings and had considered the entire record. No more is required."); *see also Boroughs of Ellwood City, Grove City, New Wilmington, Wampum, and Zelienople v. FERC,* 731 F.2d 959, 967–68 (D.C.Cir. 1984). The cases cited by Van Leer are inapposite. *See Harberson v. NLRB,* 810 F.2d 977, 984 (10th Cir.1987) (Board failed to explain why it rejected ALJ's decision); *Westinghouse Elec. Corp. v. NLRB,* 809 F.2d 419, 424 (7th Cir.1987) (neither the ALJ nor the Board dealt with evidence pertaining to a substantial issue in the case); *International Ass'n of Bridge, Structural & Ornamental Iron Workers, AFL–CIO, Local No. 111 v. NLRB,* 792 F.2d 241, 247–48 (D.C.Cir. 1986) (Board failed to explain apparent departure from established case law).