**CROSS POINTE PAPER CORPORATION, Petitioner, Cross–Respondent,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent, Cross–Petitioner.**

Nos. 95–2293, 95–2451.

United States Court of Appeals, Seventh Circuit.

Argued Jan. 10, 1996.

Decided July 15, 1996.

Mark E. Ferguson, Elizabeth L. Thompson, Bartlit, Beck, Herman, Palenchar & Scott, Chicago, IL, Laura H. Walter, Glass, McCullough, Sherrill & Harrold, Washington, DC, Gardner G. Courson (argued), Glass, McCullough, Sherrill & Harrold, Atlanta, GA, for Petitioner in both cases.

Charles P. Donnelly, Jr., N.L.R.B., Contempt Litigation Branch, Washington, DC, Elizabeth Kinney, N.L.R.B., Chicago, IL, Aileen A. Armstrong, David Seid (argued), N.L.R.B., Appellate Court, Enforcement Litigation, Washington, DC, for N.L.R.B. in No. 95–2293.

Marion L. Griffin, N.L.R.B., Contempt Litigation Branch, Washington, DC, Elizabeth Kinney, N.L.R.B., Region 13, Chicago, IL, Aileen A. Armstrong, David Seid (argued), N.L.R.B., Appellate Court, Enforcement Litigation, Washington, DC, for N.L.R.B. in No. 95–2451.

Before WOOD, Jr., CUDAHY, and ROVNER, Circuit Judges.

HARLINGTON WOOD, Jr., Circuit Judge.

Cross Pointe Paper Corporation ("Cross Pointe") petitions this court for review of a decision of the National Labor Relations Board ("the Board") certifying the United Paperworkers International Union ("the Union") as the collective bargaining representative of a unit of its employees. Cross Pointe also contests the refusal of the Board's regional director to transmit to the Board the witness statements that she collected during her *ex parte* investigation into Cross Pointe's election objections. The Board cross-petitions for enforcement of its decision and order. We deny enforcement of the Board's cross-petition to enforce, grant Cross Pointe's petition to set aside certification, and remand for further proceedings.

## I. BACKGROUND

On September 15, 1993, the Union filed a petition with the Board seeking certification as the bargaining representative of Cross Pointe's production and maintenance employees. On November 4, 1993, a secret-ballot election was conducted by the Board's regional office pursuant to an agreement between the parties. In a close vote, a majority of those voting chose union representation.[1]

Cross Pointe subsequently filed objections to the election. Cross Pointe alleged that the laboratory conditions necessary for a free and fair election were undone by certain incidents occurring before and during the election, including: (1) the circulation of an ethnically offensive rumor; (2) coercive behavior on the part of certain Cross Pointe supervisors who favored union representation; (3) the loud and public complaining by one employee to the effect that the election

---

1. Approximately ninety-three employees were eligible to vote. The final tally showed forty-six votes in favor of representation, forty-one votes against representation, one sustained objection, and one challenged (but unresolved) ballot.

was not secret; and (4) the keeping of an improper vote tally during the election by a union observer.

Pursuant to the Board's rules and regulations, the regional director conducted an *ex parte* investigation of Cross Pointe's objections during which employees and union officials were interviewed. 29 C.F.R. § 102.69(d). Based on this investigation, the regional director recommended the overruling of all of Cross Pointe's objections. No hearing was held. Cross Pointe then filed exceptions to the regional director's report with the Board; the regional director refused Cross Pointe's request to transmit to the Board all of the investigatory notes and witness statements that she had amassed during her *ex parte* investigation. Thereafter, a majority of a panel of the Board adopted the director's recommendations. The Union was subsequently certified as the employees' collective bargaining representative on January 9, 1995.

 Cross Pointe has since refused to recognize the Union, admittedly for the purpose of seeking further review of the Board's election determination. In response, the Board's general counsel issued a complaint charging Cross Pointe with violating sections 8(a)(1) and (5) of the National Labor Relations Act (the "Act"), 29 U.S.C. §§ 158(a)(1) & (5). In its defense, Cross Pointe contended that the Union's certification was legally invalid. The general counsel then moved to transfer the case to the Board and for summary judgment. Cross Pointe unsuccessfully repeated its request, on several further occasions, that the regional director transmit the entire record of her investigation to the Board. On May 22, 1995, the Board granted the general counsel's motion for summary judgment. Cross Pointe then filed a petition for review in this court contesting the regional director's refusal to transmit the entire record to the Board and seeking the invalidation of the Union's certification.[2] In the alternative, Cross Pointe seeks a hearing before the Board. The Board cross-petitioned for enforcement of its decision and order.

**2.** "On appeal from the Board's resolution of the unfair labor practice charges, we may consider the disputed representation election." *NLRB v.*

## II. STANDARD OF REVIEW

 Since Cross Pointe admits that it has refused to bargain and provide relevant information to the Union, we must uphold the Board's conclusion that Cross Pointe is in violation of sections 8(a)(1) and (5) of the Act, 29 U.S.C. §§ 158(a)(1) & (5), unless, as Cross Pointe argues, the Union was improperly certified in the first place. *Beloit Corp., Castings Div. v. NLRB*, 857 F.2d 1154, 1156 (7th Cir.1988). Our review in this area is very limited: "We must defer to the Board's reasonable selection of rules and policies to govern the election, and we will uphold the application of those rules if substantial evidence supported the Board's decision." *Van Leer Containers, Inc. v. NLRB*, 841 F.2d 779, 784 (7th Cir.1988) (citation omitted).

 "Deference, however, does not entail complete abdication of the judicial role." *K-Mart Corp. v. NLRB*, 62 F.3d 209, 212 (7th Cir.1995) (citations omitted). For the reasons discussed below, we conclude that Cross Pointe's argument regarding the insufficiency of the record transmitted to the Board is well-founded and we therefore set aside the certification and remand this matter to the Board for additional proceedings. Thus, we need not reach Cross Pointe's other arguments regarding election misconduct. *Prairie Tank S., Inc. v. NLRB*, 710 F.2d 1262, 1265 (7th Cir.1983).

## III. DISCUSSION

*The Regional Director's Refusal to Transmit the Entire Evidentiary Record to the Board*

 Cross Pointe contends that the Board abused its discretion by adopting the regional director's report without examining all of the evidence that the regional director relied upon in reaching her decision. By refusing to transmit the entire record, the regional director was acting pursuant to the Board's regulations:

*Service Am. Corp.*, 841 F.2d 191, 193 n. 3 (7th Cir.1988) (citation omitted).

In a proceeding pursuant to this section in which no hearing is held, *the record shall consist of ... any documentary evidence, excluding statements of witnesses, relied upon by the regional director in his decision or report....* Materials other than those set out above shall not be a part of the record, except as provided in paragraph (g)(3) [3] of this section.

29 C.F.R. § 102.69(g)(1)(ii) (emphasis added).

Cross Pointe argues, however, that this procedure is violative of our ruling in *NLRB v. Allis–Chalmers Corp.,* 680 F.2d 1166 (7th Cir.1982). In *Allis–Chalmers* we stated:

"We view the Board's position that it does not have to review the documentary evidence as an abdication of its responsibilities under the National Labor Relations Act. If the Board does not look at the evidence it can do nothing but rubber stamp the Regional Director's decision. Meaningful review is impossible without a review of the evidence. In addition, if the Board does not review the evidence and make it part of the record, it is impossible for a court to review the Board's action, since there is no record to review. We hold that it is an abuse of discretion for the Board to adopt the report of the Regional Director without reviewing the documentary evidence relied upon by the Regional Director."

*Id.* at 1169 (quoting *NLRB v. North Elec. Co., Plant No. 10,* 644 F.2d 580, 584 (6th Cir.1981)).

As the Board has noted, 29 C.F.R. § 102.69 was amended subsequent to the *Allis–Chalmers* decision. See 46 Fed.Reg. 45,-922 (1981). Whereas we assumed in *Allis–Chalmers* that the regional director was not required to transmit *any* of the relied-upon evidentiary material, § 102.69 as amended now excludes only witness statements from mandatory transmission to the Board. The Board is incorrect, however, to state that we

"expressly approved" these amendments in *L.C. Cassidy & Son, Inc. v. NLRB,* 745 F.2d 1059, 1065 (7th Cir.1984).

Although we did discuss the amended language of § 102.69 in *L.C. Cassidy,* we did not see fit to definitively rule upon this language because the employer neither contested the regional director's factual findings nor claimed that the record contained disputed factual issues which necessitated a hearing. *Id.* Instead, the company simply disputed the regional director's application of precedent to the facts. *Id.* For one reason or another, we have also ·declined to address the amended language on every other occasion when it arose. See *Van Leer Containers, Inc. v. NLRB,* 841 F.2d 779, 783 (7th Cir.1988) (finding that the amended § 102.69 clearly provided notice that the Board did not consider witness statements collected by the regional director to be a part of the record and that the company had thus waived its incomplete record argument by not raising it earlier); *NLRB v. Browning–Ferris Indus. of Louisville, Inc.,* 803 F.2d 345, 350 (7th Cir. 1986) (same); *NLRB v. Affiliated Midwest Hosp., Inc.,* 789 F.2d 524, 533 (7th Cir.1986) (same); *NLRB v. Speedway Petro., Div. of Emro Mktg. Co.,* 768 F.2d 151, 159 (7th Cir.1985) (same); and *NLRB v. Howard Johnson Motor Lodge,* 705 F.2d 932, 936 (7th Cir.1983) (declining to address the incomplete record argument in light of the decision—previously reached on other grounds—to remand for an evidentiary hearing). Thus, the question of the reasonableness of the post-amendment version of § 102.69 is squarely before us for the first time.

In our view, the amendments to § 102.69 do represent a step in the right direction: By mandating the transmission of at least a portion of the evidence that the regional director relied upon, disputes such as this one are less likely to arise. As this case demonstrates, however, the amendments to § 102.69 do not

---

**3.** Sub-section (g)(3) provides:

In a proceeding pursuant to this section in which no hearing is held, a party ... may support its submission to the Board by appending thereto copies of documentary evidence, including copies of any affidavits, it has timely submitted to the regional director and which were not included in the report or decision.

Documentary evidence so appended shall thereupon become part of the record in the proceeding. Failure to timely submit such documentary evidence ... shall preclude a party from re[ ]lying on such evidence in any subsequent related unfair labor proceeding.

29 C.F.R. § 102.69(g)(3).

go far enough. What difference does it make whether the regional director withholds *all* of the evidence that she has collected, or whether she withholds *only* witness statements, if it is the witness statements that happen to be crucial to the disposition of a particular matter? It is true that the Board's regulations permit a party to augment the record by submitting whatever affidavits the party chooses. 29 C.F.R. § 102.69(g)(3). As we have previously stated, however, the amended language leaves us " 'uncertain as to how [the company] could file with the Board affidavits that it may not have had access to.' " *Van Leer*, 841 F.2d at 783 (quoting *Browning–Ferris*, 803 F.2d at 350). Therefore, we reaffirm our holding in *Allis–Chalmers*: "[T]his Court cannot enforce an order of the NLRB founded upon a regional director's *ex parte* investigation under 29 C.F.R. § 102.69 where the Board has not seen the evidence relied on by the regional director." *Allis–Chalmers*, 680 F.2d at 1169 (footnote omitted).

We need only address the treatment afforded to one of Cross Pointe's election-related allegations to illustrate the dangers inherent in the Board's current practice. As mentioned above, Cross Pointe argues that a union observer, Ricardo Briones, improperly engaged in note-taking during the election. While such an occurrence does not automatically require the setting aside of an election, it is a rather serious matter:

> The Board .and courts long have held that voting in Board cases must be free of any impropriety, and that employees must be permitted to cast their ballots in secret, in complete freedom, and without fear of reprisal or discipline. Activity that reasonably can be construed as improper is proscribed whether or not the activity is, in fact, improper. Impropriety has taken many forms in the cases, and one such is the keeping of lists of voters. Such lists are improper if employee voters know, or reasonably can infer, that their names are being recorded.

*Masonic Homes of Cal., Inc.*, 258 NLRB 41, 48, 1981 WL 20775 (1981) (footnote omitted).

In support of its list-keeping allegation, Cross Pointe submitted the affidavits of its two election observers and two other employees who attested variously that they observed Briones "wr[i]te several words," "make a mark," "writ[e] something down," and "write things down when an employee stated his name." After conducting her *ex parte* investigation, however, the regional director came to a different conclusion. The director found that "it is uncontroverted" that Briones was merely "putting check marks on the sheet of paper as voters arrived in order to count how many had voted" and that Briones "tried to conceal the list." The regional director then found that this conduct was not objectionable. Therefore, unless we are to attribute the director's conclusion to bad faith or careless indifference, we can safely infer that she was swayed by the evidence she collected during her *ex parte* investigation. What we are unable to ascertain, however, is the nature and strength of that evidence.[4] Thus, the company is unable to effectively challenge the regional director's conclusions and we—together with the Board-are in a position to do little more than rubber stamp those conclusions.

We recognize that the Board had valid concerns in mind when it sought to exclude certain witness statements from the record transmitted to the Board—namely, the protection of witnesses' confidentiality interests and a desire to foster expediency. We further believe, however, that there are less objectional methods available to accomplish these goals. Witness statements identified as sensitive could, for example, be screened *in camera*. We credit the Board with the dexterity needed to balance the competing interests at play here and to arrive at a satisfactory solution.

 Furthermore, our decision is not intended to lessen the formidable burden which rests upon a party challenging an election. The objecting party must still show that substantial evidence does not support

---

4. Regardless of the strength of the evidence that the regional director collected, we are confused as to how the director arrived at her "uncontroverted" conclusion in the face of the company's evidence to the contrary.

the Board's decision—to wit, that the alleged "unlawful acts occurred and 'that those acts interfered with the employees' exercise of free choice to such an extent that they materially affected the results of the election.'" *NLRB v. Chicago Tribune Co.*, 943 F.2d 791, 794 (7th Cir.1991) (footnote omitted) (quoting *NLRB v. Service Am. Corp.*, 841 F.2d 191, 195 (7th Cir.1988)), *cert. denied*, 504 U.S. 955, 112 S.Ct. 2301, 119 L.Ed.2d 224 (1992). We simply hold here that the Board may not adopt the regional director's recommendations without reviewing all of the documentary evidence that the director relied upon in arriving at those recommendations.

Upon remand, we anticipate that the Board will first seek to obtain all the witness statements from the regional director that she relied upon in arriving at her recommendations. However, since the regional director was aware at the time that the Board's regulations did not require her to transmit these witness statements to the Board, it is quite possible that she either did not document these statements or retain them in the same manner as she would have otherwise. Therefore, if the witness statements in question are not available, or if they are otherwise insufficient, or if there is no other way in which the evidentiary gaps may be filled, a new representation election may need to be held. A new election is, of course, a remedy of last resort.

## IV. CONCLUSION

For the reasons provided above, the Board's petition to enforce is DENIED, the certification is VACATED, and the cause is REMANDED to the Board for proceedings not inconsistent with this opinion. Costs are taxed against the National Labor Relations Board.