**TEMPCO ELECTRIC HEATER CORPORATION, Petitioner, Cross–Respondent,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent, Cross– Petitioner.**

**Nos. 92–3050 and 92–3249.**

United States Court of Appeals, Seventh Circuit.

Argued March 30, 1993.

Decided July 19, 1993.

Robert P. Casey, Charles E. Murphy, Richard L. Samson (argued), David B. Montgomery, Murphy, Smith & Polk, Chicago, IL, for petitioner.

Elizabeth Kinney, Denise R. Jackson, N.L.R.B., Chicago, IL, Aileen A. Armstrong, Nancy J. Gottfried (argued), Appellate Court, Enforcement Litigation, Paul J. Spielberg, Washington, DC, for respondent.

Before CUMMINGS and RIPPLE, Circuit Judges, and TIMBERS, Senior Circuit Judge.[*]

CUMMINGS, Circuit Judge.

Tempco Electric Heater Corp. seeks review of an order of the National Labor Relations Board ("Board") requiring it to bargain with Local 1031, International Brotherhood of Electrical Workers, AFL–CIO, as the collective bargaining representative of Tempco's full-time and regular part-time production and maintenance employees at Tempco's facility in Wood Dale, Illinois.[1] In turn, the Board has applied for enforcement of its order.

Tempco manufactures heating elements for the package and plastic processing industry. In March 1991, the Union filed a petition with the Board seeking to represent Tempco's production and maintenance employees. An election with secret ballots was held on May 17, 1991; eighty-one workers voted for the Union and sixty-five against. Although seven ballots were challenged, that would have been an insufficient number to alter the outcome of the election even if the challenges were valid. Nevertheless, Tempco raised

---

[*] The Honorable William H. Timbers, Senior Circuit Judge of the United States Court of Appeals for the Second Circuit, is sitting by designation.

1. The bargaining unit excludes office clericals, sales persons, employees of independent contractors, professional employees, temporary summer help, guards and supervisors.

several objections to the way the election was conducted. The company complained that workers were intimidated, coerced and misled into voting for union representation.

The company took its objections to an NLRB hearing officer who sided with the Union after listening to testimony for four days. The hearing officer recommended to the Board that a Certificate of Representative issue, meaning that the Union would be approved to represent the employees in collective bargaining. On February 26, 1992, a three-member panel of the Board adopted the hearing officer's findings and certified the Union, but Tempco still refused to bargain with it. This led the Board's general counsel in April 1992 to issue a complaint against Tempco for engaging in unfair labor practices. The case went before the Board again, which found that Tempco violated 29 U.S.C. §§ 158(a)(5) and (1) by refusing to bargain with the Union and by withholding critical information from the Union. The Board castigated Tempco because all of the evidence it claimed infected the election had been or should have been raised in the earlier proceedings before the hearing officer and the Board.

Tempco remains persistent. The company appealed the Board's cease and desist order to this Court, and we conclude its claims that the election was unfair are no more compelling than did the NLRB hearing officer or the Board on two occasions. We have jurisdiction to entertain direct appeals of Board decisions under 29 U.S.C. §§ 160(e) and (f).

Tempco argues that at a mass meeting (eighty-six workers attended) held on the eve of the election at a local VFW hall, an agent of the Union threatened the job of one employee who challenged the Union's promises about better wages and benefits. The company also claims that the Union conducted an improper poll to gauge its support among the workers present. The meeting was conducted by the Union's assistant business manager and recording secretary, Roy Cortes. A number of other Union officials were there as well including the president of the local. Cortes spoke at some length about the Union's representation of other companies including Zenith Electronics Corp. and A.R.I.

Okasaki, a competitor of Tempco's. Cortes promised that workers' wages would go "higher and higher." At one point Cortes' assertions of better wages and benefits were challenged by an employee named Orlando Monte, who had been hired only the month before. Monte said that his father had worked at Zenith and that Cortes' rosy picture of life in a Union was misleading. Monte also said that the Union representatives were liars and that he would rather leave the company than pay union dues. A number of employees starting yelling at Monte; they questioned his authority to speak since he had only been at Tempco for a few weeks. Cortes picked up the theme and claimed that Monte had been sent as an infiltrator by Fermin Adames, Tempco's president, to disrupt the meeting. Then, according to the testimony of Monte and others before the hearing officer, Cortes said to Monte something like, "Yourself, the one next to you, and those others who are non-union supporters, I will promise you that from a week to a month's time you will not be employed; you will not be working" (Monte's version); or "Once he performs his dirty work, he is going to go somewhere else and perform the same dirty work for another employer" (Cortes' version); or "His job was finished, he wasn't going to work anymore for Tempco" (another worker's version) (plaintiff's app. at 18).

The question we must answer is whether the union representative's statements to Monte were a threat which poisoned the election and coerced other workers into voting for the Union. Since the results of a Board-supervised and certified election are presumptively valid, *NLRB v. Browning–Ferris Ind. of Louisville, Inc.*, 803 F.2d 345, 347 (7th Cir.1986), and the objecting party bears the burden of proof, *NLRB v. Mattison Machine Works*, 365 U.S. 123, 124, 81 S.Ct. 434, 435, 5 L.Ed.2d 455, Tempco must show that Cortes' conduct "so influenced potential voters that free choice was impossible." *NLRB v. Chicago Marine Containers, Inc.*, 745 F.2d 493, 500 (7th Cir. 1984), quoting *NLRB v. Advanced Systems, Inc.*, 681 F.2d 570, 575 (9th Cir.1982). Tempco has not even come close to this

showing. First, there is an innocent interpretation to Cortes' remarks. If he genuinely believed that Monte was a company shill sent to break up the meeting, statements that his employment at Tempco would be short-lived might have merely been a prediction that Monte would move on to perform the same anti-union function at another company after the election. This interpretation of Cortes' statements is hardly implausible since Monte, the most outspoken opponent of the Union, had been employed for just a month. More to the point, even if Cortes' remarks were a threat to Monte, most of the workers would have thought it was an idle threat—*i.e.*, that the Union would be unable actually to fire a worker who spoke against collective bargaining. If a reasonable employee would not think that a threat was within the Union's power to achieve, it is not sufficiently coercive to taint an election. *NLRB v. Sumter Plywood Corporation*, 535 F.2d 917, 924 (5th Cir.1976), certiorari denied, 429 U.S. 1092, 97 S.Ct. 1105, 51 L.Ed.2d 538.

■ Tempco's next argument is that the Union conducted an improper poll. The danger of a poll is that it forces undecided workers to express public support or opposition. We have held that employers may not conduct a poll under any circumstances, but that a Union may unless the polling *"in fact* was coercive and *in fact* influenced the result of the election." *Kusan Mfg. Co. v. NLRB*, 749 F.2d 362, 365 (6th Cir.1984). Tempco cannot meet that test because there was no poll taken at the May 16 meeting. All that Cortes said was, "See you at the election, we will win. Show your pride," to which a number of employees shouted "yes!" This was nothing more than a rallying cry to vote. Cortes did not even ask those present to express a preference—that undecided workers might have felt pressured to state an opinion in these circumstances is far-fetched.

The Board's order will be enforced in full.