62 F.3d 209
 149 L.R.R.M. (BNA) 3100, 130 Lab.Cas. P 11,392
 K-MART CORPORATION, Petitioner, Cross-Respondent,
v.
NATIONAL LABOR RELATIONS BOARD, Respondent, Cross-Petitioner,
and
Truck Drivers, Oil Drivers, Filling Station and Platform
Workers, Local 705, International Brotherhood of
Teamsters, Intervening Respondent,
Intervening Cross-Petitioner.
 Nos. 94-3528, 94-3634.
 United States Court of Appeals,
Seventh Circuit.
 Argued May 11, 1995.
Decided Aug. 11, 1995.
 
 Elizabeth Kinney, N.L.R.B., Region 13, Chicago, IL, Aileen A. Armstrong, Vincent Falvo (argued), Paul J. Spielberg, N.L.R.B., Appellate Court, Enforcement Litigation, Washington, DC, for N.L.R.B. in No. 94-3634.
 John W. Noble, Jr. (argued), Rivkin, Radler & Kremer, Chicago, IL, for K-Mart Corp. in No. 94-3634.
 Peggy A. Hillman (argued), Indianapolis, IN, Thomas R. Carpenter, Intern. Broth. of Teamsters, Local 705, Chicago, IL, for Truck Drivers, Oil Drivers, Filling Station and Platform Workers' Union Local 705.
 John W. Noble, Jr. (argued), Jon Zimring, Rivkin, Radler & Kremer, Chicago, IL, for K-Mart Corp. in No. 94-3528.
 John C. Truesdale, N.L.R.B., Contempt Litigation Branch, Washington, DC, Elizabeth Kinney, N.L.R.B., Region 13, Chicago, IL, Aileen A. Armstrong, Vincent Falvo (argued), Paul J. Spielberg, N.L.R.B., Appellate Court, Enforcement Litigation, Washington, DC, for N.L.R.B. in No. 94-3528.
 Before CUDAHY, ESCHBACH and RIPPLE, Circuit Judges.
 RIPPLE, Circuit Judge.
 
 
 1
 K-Mart Corporation seeks review, and the National Labor Relations Board ("NLRB" or "Board") seeks enforcement, of an order directing K-Mart to bargain with Local 705 of the International Brotherhood of Teamsters ("Union"). K-Mart objects to the actions of union officials, who photographed and videotaped the area near the entrance to K-Mart's facility during a union election campaign. The NLRB determined that the photographic activity was benign, and, therefore, that it did not reasonably tend to interfere with employees' free and uncoerced choice. For the reasons that follow, we remand for further proceedings.
 
 
 2
 * BACKGROUND
 
 A. Facts
 
 3
 On June 1, 1993, Local 705 of the International Brotherhood of Teamsters filed a petition with the NLRB to represent employees at K-Mart Corporation's Manteno, Illinois distribution facility. The proposed bargaining unit contained approximately five hundred members; the ensuing election campaign was the area's largest in the past thirty years. As part of its campaign, the Union positioned a thirteen-foot tall inflated rat near the entrance to K-Mart's facility. The rat was intended to symbolize K-Mart management, which allegedly had spied upon the employees.
 
 
 4
 The election occurred July 23, 1993. On that day and the days immediately preceding it, union handbillers approached the vehicles of employees who were entering or exiting the distribution center. The handbillers offered the employees pro-union literature. Also at this time, various union officials were photographing and videotaping the area near the entrance to the facility. A photographer for a local newspaper also was present. No employee inquired about the purpose of the Union's photographic activity, nor did the Union explain its purpose to K-Mart employees. The Union won the election, two-hundred nineteen to two-hundred twelve, with four challenged ballots and forty-three abstentions.B. Earlier Proceedings
 
 
 5
 K-Mart filed several objections to the Union's conduct. One objection stated that the Union created an atmosphere of fear and coercion by photographing and videotaping the area where handbillers were offering pro-union literature to employees.[1] The NLRB Regional Director ordered a hearing on K-Mart's objections. At the hearing, four witnesses testified on behalf of K-Mart. All stated that, on either the night before or the morning of the election, they believed they were photographed or videotaped as they refused to accept union literature. There was also testimony that employees throughout the Distribution Center were discussing the picture-taking. However, none of the witnesses asked the Union why it was taking the pictures. The Union acknowledged that it did not explain the purpose of its picture-taking to any of K-Mart's employees. However, the Union sought to explain its purpose at the hearing. The Union submitted that the photographs and videotape were intended merely to record the election campaign for posterity, not to record the identity of anti-union employees. The official who took the videotape, and one of the officials who took the photographs, testified that they were focusing upon the inflated rat rather than the handbillers.
 
 
 6
 After hearing the evidence and reviewing the photographs and videotape, the Hearing Officer recommended that K-Mart's objection be overruled. The Hearing Officer reasoned that the explanation the Union offered for the picture-taking was legitimate. He also noted that, although one of the union photographers did not testify, none of his pictures contained bargaining unit employees. The Hearing Officer concluded that the Union's "photographic efforts were of such a benign and innocuous nature as not to reasonably tend to interfere with employees' free and uncoerced choice in the election." Mem.Op. at 5. The Officer did not comment specifically upon the testimony of K-Mart's witnesses, although he did state generally that any testimony which contradicted the Officer's findings was discredited. See id. at 2 n. 1. The Board subsequently adopted the Hearing Officer's recommendation and ordered that the Union be certified as the employees' bargaining unit representative. K-Mart refused to bargain with the Union. The Board then issued an Order finding that K-Mart had committed unfair labor practices in violation of sections 8(a)(1) and 8(a)(5) of the National Labor Relations Act, 29 U.S.C. Sec. 158(a)(1), (a)(5), by refusing to bargain.
 
 II
 DISCUSSION
 
 7
 On appeal, K-Mart submits that the Board's Order is not supported by substantial evidence. K-Mart notes that four witnesses testified, without contradiction, that they felt intimidated by the Union's picture-taking. K-Mart then argues that the Union offered no explanation for its activities at the time of the incident. K-Mart alleges, therefore, that the Union should not have been certified in light of the Board's decisions in Mike Yurosek & Son, Inc., 292 N.L.R.B. 1074, 1989 WL 223861 (1989), and Pepsi-Cola Bottling Co., 289 N.L.R.B. 736, 1988 WL 213816 (1988), which found similar union conduct objectionable. At minimum, K-Mart submits, the Board's decision should be remanded so that the Board can harmonize it with these earlier cases.
 
 
 8
 The Board and Local 705 respond that the NLRB's decision was supported by substantial evidence. They emphasize that the photographs and videotape in the record corroborate the explanation for the picture-taking that the Union proffered at the administrative hearing. They also contend that Board law permits such post-incident explanations. Finally, they submit that the decision in this case is consistent with the Board's election surveillance case law.
 
 A.
 
 9
 We have jurisdiction to review applications for enforcement and petitions for review of Board decisions pursuant to 29 U.S.C. Secs. 160(e) and (f).[2] In exercising our review, we are reminded that "[t]he results of a Board-supervised and certified election are presumptively valid." Tempco Elec. Heater Corp. v. NLRB, 999 F.2d 1109, 1111 (7th Cir.1993). The objecting party, in this case, K-Mart, has the burden of proving that the Union's conduct "so influenced potential voters that free choice was impossible." Id. (quotation and citations omitted). Moreover, the Board's determination must be upheld if "its factual findings are supported by substantial evidence in the record," considered as a whole, and if "its legal conclusions have a reasonable basis in the law." NLRB v. WFMT, 997 F.2d 269, 273 (7th Cir.1993) (quotation and citation omitted). We may not displace the Board's conclusions simply because we would reach a different result if we reviewed the case de novo. NLRB v. P*I*E Nationwide, Inc., 923 F.2d 506, 513 (7th Cir.1991). Our review, therefore, is limited and deferential. WFMT, 997 F.2d at 273; Van Leer Containers, Inc. v. NLRB, 841 F.2d 779, 784 (7th Cir.1988).
 
 
 10
 Deference, however, does not entail complete abdication of the judicial role. See Cleveland Constr., Inc. v. NLRB, 44 F.3d 1010, 1014 (D.C.Cir.1995) ("[W]e will not merely rubberstamp NLRB decisions."); Northport Health Servs., Inc. v. NLRB, 961 F.2d 1547, 1550 (11th Cir.1992) ("In examining the record for substantial evidence, this court is not a mere rubber stamp of the Board."). Thus, when an ALJ's credibility determinations are based upon "inadequate reasons or no reasons at all," they need not be upheld. NLRB v. Cutting, Inc., 701 F.2d 659, 667 (7th Cir.1983); accord Blue Circle Cement Co. v. NLRB, 41 F.3d 203, 206 (5th Cir.1994). Likewise, when the Board's conclusion on a central issue is supported by inadequate findings, a remand for further factual development is appropriate. See Esmark, Inc. v. NLRB, 887 F.2d 739, 760 (7th Cir.1989); see also NLRB v. Auciello Iron Works, 980 F.2d 804, 813 (1st Cir.1992) ("A court may require that the Board's decision be supported by articulate, cogent, and reliable analysis.") (quotation and citation omitted) (collecting cases).
 
 B.
 
 11
 This case presents one of those rare circumstances in which, despite the limited nature of our review, we must remand to the Board for additional proceedings. Cf. Synergy Gas Corp. v. NLRB, 19 F.3d 649, 654 (D.C.Cir.1994) (Silberman, J., concurring) (emphasizing that appellate decisions denying enforcement of NLRB orders on grounds of insufficient evidence are rare, and cautioning practitioners not to gain the wrong impression). Our principal concern is the absence of any reasoned treatment in the Hearing Officer's decision of the testimony of the four witnesses who claimed the Union's picture-taking intimidated them. This testimony was unrebutted and raised serious questions about the propriety of the election proceedings. Indeed, there was testimony that many employees in the distribution center were discussing the nature and purpose of the Union's unexplained picture-taking. It is clear that election surveillance, which tends to interfere with an employee's section 7 rights both to engage in, and to refrain from engaging in, union activity, see 29 U.S.C. Sec. 157, may be grounds for setting aside the results of a union election. Sunbelt Mfg., Inc., 308 N.L.R.B. 780, 780 n. 3, 1992 WL 230488 (1992) ("It is a reasonable tendency under the circumstances which governs the inquiry in each case."), aff'd in part without opinion, 996 F.2d 305 (5th Cir.1993).[3] The Board has emphasized that its inquiry in such cases is extremely fact-specific, see Industrial Acoustics Co., 297 N.L.R.B. 387, 387 n. 1, 1989 WL 224453 (1989), enforcement denied on other grounds, 912 F.2d 717 (4th Cir.1990), and has noted generally that the photographing of employees "at the plant entrance in the presence of union campaign activity" could lead employees reasonably to conclude "that their responses to the union campaign activity were being recorded for the purpose of future retaliation." Nu Skin Int'l, Inc., 307 N.L.R.B. 223, 224, 1992 WL 87489 (1992) (discussing Board precedents). Yet, aside from a boilerplate comment concerning general credibility determinations, see Mem.Op. at 2 n. 1, the Hearing Officer did not address the testimony of the four witnesses who claimed they were intimidated by the Union's activities. Upon review, the Board simply adopted, without analysis, the Hearing Officer's recommendation. Given the seriousness of these witnesses' statements, as well as the evidence that other employees were discussing the picture-taking, the Hearing Officer's cursory treatment of the testimony, and, in turn, the Board's adoption of the Hearing Officer's recommendation without additional analysis, are inadequate. See Cutting, Inc., 701 F.2d at 667.[4]
 
 
 12
 Although counsel for the Board attempted to bolster the deficiencies in the Hearing Officer's treatment of this key testimony in both his brief and at oral argument, it is well settled that "[t]he Board's appellate counsel cannot fill in the holes in the agency's decision." P*I*E Nationwide, 923 F.2d at 518 (quotation and citation omitted); see also Burlington Truck Lines, Inc. v. United States, 371 U.S. 156, 168, 83 S.Ct. 239, 245, 9 L.Ed.2d 207 (1962) ("The courts may not accept appellate counsel's post hoc rationalizations for agency action."). Accordingly, we are unable, on this record, to review adequately the Board's decision because the Hearing Officer's analysis is deficient. We therefore remand "so that the Board can properly analyze this case." See Northport Health Servs., 961 F.2d at 1553; cf. Esmark, Inc., 887 F.2d at 760. We emphasize that we express no opinion as to whether or not the Union's conduct actually rose to a level sufficient to justify upsetting the election. That matter is left for the Board on remand.Conclusion
 
 
 13
 For the foregoing reasons, the petition for review is granted (No. 94-3528) and the application for enforcement is denied (No. 94-3634). The Board's Order is remanded with instructions that the Board more adequately address the contrary evidence introduced by petitioner K-Mart Corporation. K-Mart may recover its costs in this court.
 
 
 14
 REVIEW GRANTED; BOARD'S ORDER REMANDED WITH INSTRUCTIONS.
 
 
 
 [1]
 K-Mart has not sought review of the Board's decision overruling its other objections
 
 
 [2]
 Section 10(e) of the NLRA provides, in relevant part:
 The Board shall have the power to petition any court of appeals of the United States ... wherein the unfair labor practice in question occurred ... for enforcement of such order.
 29 U.S.C. Sec. 160(e).
 Section 10(f) provides, in pertinent part:
 Any person aggrieved by a final order of the Board ... may obtain review of such order in any United States court of appeals in the circuit wherein the unfair labor practice in question was alleged to have been engaged in or wherein such person resides or transacts business, or in the United States Court of Appeals for the District of Columbia.
 29 U.S.C. Sec. 160(f).
 
 
 [3]
 See Mike Yurosek & Son, Inc., 292 N.L.R.B. 1074, 1074, 1989 WL 223861 (1989) (ordering new election where union agent took pictures of employees during election campaign, threatened employees with reprisal, offered no explanation at the time of the picture-taking, and offered weak explanation before the Board); Pepsi-Cola Bottling Co., 289 N.L.R.B. 736, 736-37, 1988 WL 213816 (1988) (same, when it was undisputed that, during course of election campaign, union, without explanation, "appeared to videotape at least two employees" as they exited the employer's premises and were handed leaflets); see also Sunbelt Mfg., Inc., 308 N.L.R.B. 780, 780 n. 3, 1992 WL 230488 (1992) (rejecting benign explanation offered at administrative hearing for employer's allegedly intimidating picture-taking, when election campaign was marked by employer threats of reprisal and no explanation for the picture-taking was given to employees at the time of the incident), aff'd in part without opinion, 996 F.2d 305 (5th Cir.1993); cf. Millard Processing Servs., Inc. v. NLRB, 2 F.3d 258 (8th Cir.1993) (recognizing that election surveillance may be problematic, but enforcing Board bargaining order where cable television employee, who was not a union agent, videotaped employees during election campaign and union official explained that cameraman was not affiliated with the union to every employee who asked), enforcing 304 N.L.R.B. 770, 1991 WL 187498 (1991), cert. denied, --- U.S. ----, 114 S.Ct. 922, 127 L.Ed.2d 215 (1994); Lakewood Eng'g & Mfg. Co., 310 N.L.R.B. No. 200, 1993 WL 131988 (1993) (finding no violation when employer failed to introduce evidence that unexplained picture-taking intimidated employees), enforced, Nos. 93-2771, 93-2938, 1994 WL 283611, 1994 U.S.App. LEXIS 16070 (7th Cir. June 23, 1994); Nu Skin Int'l, Inc., 307 N.L.R.B. 223, 224-25, 1992 WL 87489 (1992) (same, when, during election campaign, union photographed employees at union-sponsored picnic, and noting "[w]hile photographing the activities present in Pepsi-Cola and Mike Yurosek might readily suggest a retaliatory purpose, the Union's photographing of employees enjoying a voluntarily attended picnic does not reasonably suggest any such purpose")
 
 
 [4]
 The Eighth Circuit recently enforced a Board Order certifying a union in a case involving picture-taking by a third-party who was not a union agent. See Millard Processing Servs., Inc. v. NLRB, 2 F.3d 258, 263 (8th Cir.1993) ("[W]here the person videotaping was not a party to the election and where the record contains no evidence of violence or threats or any other facts establishing a coercive atmosphere during the election campaign, we are unwilling to find that the absence of an employee-wide explanation requires overturning the election."), enforcing 304 N.L.R.B. 770, 1991 WL 187498 (1991), cert. denied, --- U.S. ----, 114 S.Ct. 922, 127 L.Ed.2d 215 (1994). The instant case, in contrast, involves picture-taking by union officials