SYNERGY GAS CORPORATION,
Petitioner,

v.

NATIONAL LABOR RELATIONS
BOARD, Respondent.

No. 92–1553.

United States Court of Appeals,
District of Columbia Circuit.

Argued Jan. 11, 1994.

Decided March 25, 1994.

Elliot J. Mandel, Melville, NY, argued the cause for petitioner/cross-respondent. With him on the briefs was Peter A. Schneider.

William M. Bernstein, Atty., N.L.R.B., Washington, DC, argued the cause for respondent/cross-petitioner. With him on the brief was Aileen A. Armstrong, Deputy Associate Gen. Counsel, N.L.R.B. Peter D. Winkler, entered an appearance.

Before SILBERMAN, SENTELLE, and HENDERSON, Circuit Judges.

Opinion for the Court filed by Circuit Judge SENTELLE.

Concurring opinion filed by Circuit Judge SILBERMAN.

SENTELLE, Circuit Judge:

Synergy Gas Corporation ("the Company") petitions for review of a decision of the National Labor Relations Board ("NLRB" or "Board") finding that Synergy had engaged in several unfair labor practices. *Synergy Gas Corp.*, 309 N.L.R.B. No. 18 (1992). Respondent, the NLRB, cross-petitions for enforcement of its order. While we find most of the Company's claims to be without merit, the record does not reveal substantial evidence to support the Board's conclusion that the Company would not have dismissed one employee, Thomas Nastasi, even absent his pro-union sentiments. We therefore grant the Company's petition for review as to that one violation and deny the Board's application for enforcement with respect to the discharge of this employee only.

## I. BACKGROUND

Synergy Gas is a corporation engaged in the retail sale and distribution of propane gas. The events in question here concern Synergy's branch located in Cold Spring, New York. On March 3, 1989, Local 456, International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, AFL–CIO ("the Union") was certified as the exclusive collective bargaining representative of the Cold Spring branch employees in a unit of drivers, installers, servicemen and yardmen.

In the months following the election, the Union, as well as one individual employee, filed a series of unfair labor practice charges against the Company. These charges were heard in a consolidated hearing before an Administrative Law Judge ("ALJ"), who concluded that the Company had violated the National Labor Relations Act ("the Act") with respect to all claims.

The Company appealed this determination to the full Board, which adopted the ALJ's findings of fact and concluded that the Company had engaged in unfair labor practices with respect to five separate incidents. First, the Board found that the Company violated section 8(a)(1) of the Act, 28 U.S.C. § 158(a)(1) (1988), by threatening to withhold a promised pay raise from employee Stephen Brady in order to discourage support for the Union. Second, the Board found that the Company had violated section 8(a)(1) by telling another employee that it "would not allow the Union to get into [the Cold Spring] branch under any circumstances at all." Third, the Board found that the Company violated sections 8(a)(1) and (3) of the Act, 29 U.S.C. §§ 158(a)(1) and (3), by firing Thomas Nastasi because of his support for the Union and by withholding a promised pay raise from Stephen Brady in order to discourage support for the Union. Fourth, the Board found that the Company had violated sections 8(a)(1), (3) and (4) of the Act, 29 U.S.C. §§ 158(a)(1), (3) and (4), by failing to pay Frank DePolito for overtime work because he supported the Union and had filed an unfair labor practice charge against the Company. Finally, the Board found that the Company violated sections 8(a)(1) and (5) of the Act, 29 U.S.C. §§ 158(a)(1) and (5), by laying off three employees without first bargaining with the Union.

As a remedy, the Board ordered that the Company cease and desist from the violations found and any like or related activities. The Board also ordered the Company to offer to reinstate Nastasi and the three employees who were laid off and to make them whole for any losses they suffered as a result of the Company's illegal actions. Finally, the Board ordered the Company to make Brady and DePolito whole for its failure to grant

Brady a promised raise and to pay DePolito overtime.

In its appeal to this Court, the Company argues that the Board's findings are not supported by substantial evidence in the record. In addition, the Company challenges the propriety of the Board's remedy with respect to the three laid-off employees.

## II. ANALYSIS

This Court will not disturb an order of the NLRB unless, reviewing the record as a whole, it appears that the Board's factual findings are not supported by substantial evidence or that the Board acted arbitrarily or otherwise erred in applying established law to the facts at issue. *United Food and Commercial Workers Int'l Union v. NLRB,* 880 F.2d 1422, 1429 (D.C.Cir.1989). If there is substantial evidence to support the Board's conclusions, we will uphold the Board's decision even if we would have reached a different result had we considered the question *de novo.* *Universal Camera Corp. v. NLRB,* 340 U.S. 474, 488, 71 S.Ct. 456, 465, 95 L.Ed. 456 (1951). However, our review "must take into account whatever in the record fairly detracts from [the] weight" of the evidence cited by the Board to support its conclusions. *Id.* We will not "merely rubber stamp NLRB decisions." *Gold Coast Restaurant Corp. v. NLRB,* 995 F.2d 257, 263 (D.C.Cir. 1993) (internal quotation omitted).

After reviewing the record and the arguments of counsel, we conclude that the Company's claims with respect to DePolito, Brady, and the three laid-off employees, Battaglia, Cronk, and Demerest, are meritless and warrant no discussion here. The Company's petition for review is therefore denied and the Board's cross-petition for enforcement is granted with respect to these six employees. In addition, the Board's unchallenged findings that the Company violated the Act by threatening to withhold a promised pay raise from Brady and by telling Nastasi that it would not allow the Union into its plant "under any circumstances at all" are entitled to affirmance. The Board's conclusion with respect to the discharge of Thomas Nastasi requires greater exploration, however. We now turn our attention to that claim.

Thomas Nastasi was fired from his job as a truck driver for the Company. The ALJ found that his discharge was motivated by anti-union animus and therefore violated sections 8(a)(1) and (3) of the Act. The Board adopted the ALJ's findings of fact and affirmed the ALJ's conclusion of law. *See Synergy Gas Corp.,* 309 N.L.R.B. No. 18 (1992).

The ALJ found the facts surrounding Nastasi's discharge as follows: Nastasi was one of the Cold Spring employees who signed union authorization cards in December of 1988, paving the way for the Union's certification in February, 1989 as the exclusive collective bargaining representative of the Cold Spring branch employees. In April, 1989, the Cold Spring branch manager, Reid Bollick, told Nastasi that, if the Union called a strike, he hoped Nastasi "would be the one to cross the picket line." Nastasi responded that there was "no way" he would do that. Bollick then stated that the Company "would not allow the Union to get into [the Cold Spring] branch under any circumstances at all."

Five months later, on September 21, 1989, Nastasi was delivering propane gas to customers in a hilly area. Nastasi had to make a delivery "up a steep, narrow dirt road." On his way down the hill, his truck "suddenly dropped into a washout." His head hit the door jamb, he lost consciousness, and awoke to find that the truck had gone down an embankment. The accident caused approximately $5,000 damage to the truck.

Nastasi reported for work the next day and asked Branch Manager Bollick what would happen to him. Bollick replied that as far as he was concerned, nothing would happen to Nastasi because he was a good employee with a good record. He told Nastasi to go home and rest. Nastasi was fired the next work day. The Company explained that it was discharging Nastasi for his gross negligence in causing the accident.

The Board found that the Company's firing of Nastasi violated sections 8(a)(1) and (3) of the Act. Section 8(a)(1) declares it an unfair labor practice for an employer "to interfere with, restrain, or coerce employees in the

exercise of the rights guaranteed" by the Act. 29 U.S.C. § 158(a)(1). Section 8(a)(3) makes it an unfair labor practice for an employer to discriminate "in regard to ... tenure of employment or any term or condition of employment to ... discourage membership in any labor organization." *Id.* § 158(a)(3).

■ When an employee alleges that his discharge was in violation of the Act, the critical question is whether anti-union considerations spurred his firing, for "the NLRA proscribes only terminations that are motivated by the [employee's] union activities." *Avecor, Inc. v. NLRB,* 931 F.2d 924, 928 (D.C.Cir.1991), *cert. denied,* — U.S. —, 112 S.Ct. 912, 116 L.Ed.2d 812 (1992). Thus, an employer does not violate the Act merely by firing a union member; nor may an employee shield himself from all possibility of termination merely by becoming a union activist. *Id.*

■ In *Wright Line, Inc.,* 251 N.L.R.B. 1083 (1980), *enforced on other grounds,* 662 F.2d 899 (1st Cir.1981), *cert. denied,* 455 U.S. 989, 102 S.Ct. 1612, 71 L.Ed.2d 848 (1982), the NLRB established a framework for assessing whether an employer's anti-union sentiments motivated the discharge of a particular employee. The Supreme Court approved this test in *NLRB v. Transportation Management Corp.,* 462 U.S. 393, 103 S.Ct. 2469, 76 L.Ed.2d 667 (1983). Under the *Wright Line* test, the Board's General Counsel bears the initial burden of demonstrating that "an antiunion animus contributed to the employer's decision to discharge an employee." *Transportation Management,* 462 U.S. at 395, 103 S.Ct. at 2471. However, even if the General Counsel has established a *prima facie* case of anti-union animus, the employer may avoid liability by demonstrating "by a preponderance of the evidence that the worker would have been fired even if he had not been involved with the union." *Id.* Thus, credible proof that a firing constituted a legitimate business decision will protect an employer from liability even in the face of a finding of anti-union animus. *Elastic Stop Nut Div. of Harvard Indus. v. NLRB,* 921 F.2d 1275, 1280 (D.C.Cir.1990).

In this case, the Board concluded that the General Counsel had established a *prima facie* case of anti-union animus. The ALJ found that Nastasi supported the Union, that the Company was aware of his pro-union sentiments, and that the Company "on more than one occasion ... ha[d] exhibited its Union *animus.*" The "suddenness of Nastasi's termination, despite the stated belief by the Cold Spring branch manager that nothing would happen to him," and the fact that no one from the Company informed Nastasi of the basis for its finding of gross negligence led the ALJ to believe that the Company had "seized on the [accident] as a pretext to conceal a discriminatory reason to discharge him." Based on these facts, the ALJ concluded that the General Counsel had demonstrated the Company's anti-union animus.

The Company argues that these findings are insufficient to make out a *prima facie* case of anti-union animus because they are "*de minimis* and remote in time." Petitioner's Br. at 28. The Company argues that the seven-month gap between the union election and Nastasi's discharge makes it unreasonable to infer that Nastasi's union activity was the cause of his firing. Thus, the Company argues that the circumstances of Nastasi's discharge cannot be used to support a finding of anti-union animus. *See MECO Corp. v. NLRB,* 986 F.2d 1434, 1437 (D.C.Cir.1993) (eight-month gap between employees' union activities and their discharge "strongly militates against any inference of anti-union motivation"); *Synergy Gas Corp.,* 290 N.L.R.B. 1098 (1988) (fact that five weeks had elapsed between the employee's union activity and the discharge contributed to Board's decision to dismiss claim of discriminatory firing). *But see American Thread Co. v. NLRB,* 631 F.2d 316, 322 (4th Cir.1980) (even after years, "timing of the discharge is not fatal" to finding of anti-union animus since employer "was lacking a pretext to discharge [employee] until that time"); *American Petrofina Co.,* 247 N.L.R.B. 183, 190 (1980) (the "mere passage of time, of itself does not gainsay discriminatory intent") (internal quotation omitted).

■ We need not decide the propriety of the Board's finding of anti-union animus,

however, because even if the Board correctly determined that the Company's firing of Nastasi was in part motivated by anti-union considerations, the Company met its burden under the second prong of the *Wright Line* test by showing that it would have terminated Nastasi even if he had not been involved with the Union. Thus, the Company may not be held liable for firing Nastasi.

The Company introduced substantial evidence in support of its *Wright Line* defense. First, the Company's Corporate Administrator, Kevin Mitchell, testified that he was the Company's chief personnel officer, that he made the decision to fire Nastasi, and that his firing of Nastasi was consistent with past Company practice. Although the Company does not maintain a written policy governing disciplinary responses to employee accidents, Mitchell stated that whenever he considers whether to terminate an employee he bases his decision on a number of factors, including the nature of the accident, whether the accident was avoidable, whether mechanical failure was involved, whether a third party was involved, and whether the employee presents any additional safety concerns. In this case, the Company had reason to believe that Nastasi had seen the washout in the road on his way up the hill. Given that Nastasi was carrying a load of highly explosive propane gas, the Company believed that Nastasi acted negligently in proceeding up the hill in spite of this known danger. Mitchell testified that, in accordance with Company practice, he fired Nastasi because he thought the September 20 accident was "avoidable and attributable to Nastasi's gross negligence."

To further its claim that Nastasi's firing was in keeping with Company practice, the Company introduced corporate records describing cases in which Mitchell had discharged other drivers who were involved in serious accidents. In particular, the Company introduced evidence tending to show that Mitchell's termination of Nastasi was consistent with his termination of four other employees whose negligence had caused serious vehicular accidents. The decisions of the ALJ and the Board do not even mention these terminations. In its brief to this Court, the Board attempts to distinguish those four firings on grounds that the accidents at issue there were more severe than Nastasi's and that the accidents were not the sole cause of the Company's decision to terminate those employees. *See* Respondent's Br. at 23. However, we may not affirm the Board's decision based on its appellate counsel's *post hoc* distinctions of the Company's evidence. *NLRB v. Metropolitan Life Ins. Co.*, 380 U.S. 438, 444, 85 S.Ct. 1061, 1064, 13 L.Ed.2d 951 (1965); *Sheet Metal Workers, Local Union No. 91 v. NLRB*, 905 F.2d 417, 423 (D.C.Cir.1990). In spite of its appellate counsel's efforts, the fact remains that neither the ALJ nor the Board made any attempt to discount, distinguish, or even address this admittedly relevant evidence of the Company's lawful intent.

In addition, the NLRB's General Counsel subpoenaed all of the employer's accident records for the Northeast Region. As the Company pointed out at all administrative stages and before this Court, these records reveal not a single serious accident involving negligence by a propane driver that did not result in termination of employment. Both the ALJ and the Board in its brief generally ignore this point and never adequately refute it. Though they refer to an incident involving employee Robert Crissey, who was not fired after an accident, review of the evidence reveals that Crissey's accident was a materials handling mishap only incidentally involving a motor vehicle. More specifically, when he pulled the wrong lever on a hydraulic lift, he caused a propane tank to fall through the windshield of a truck. That incident is further distinguishable from both the Nastasi accident and the reports in the Company's file in that, because it was not a motor vehicle accident, the Company's main office, which evaluated Nastasi's case and the other motor vehicle accidents, did not receive a report and was not involved in the decision to retain the employee. Thus, the Crissey incident cannot be said to support the Board's conclusion that the Company failed to treat Nastasi in the same manner as all other employees involved in serious motor vehicle accidents.

The ALJ's curious attempt to discredit the uniform evidence of the Company's benign

intent by questioning whether Mitchell was truly the person in charge of the decision to fire Nastasi cannot survive even our lenient standard of judicial review. The ALJ stated that:

> Mitchell's testimony that he made the decision to discharge Nastasi was not persuasive. He works at the Respondent's corporate headquarters in Farmingdale, New York and is in charge of processing insurance claims, maintaining personnel records and overseeing safety programs and related administrative matters.

*Synergy Gas Corp.*, 309 N.L.R.B. at 9. Apparently, the ALJ could not believe that the Company would entrust personnel decisions such as hiring and firing to an administrator employed in the Company's headquarters. However, no one contradicted Mitchell's testimony that he was the person in charge of firing Nastasi; and such a centralized personnel system does not strike the Court as unusual, so as to render Mitchell's testimony inherently incredible.

The ALJ also attempted to discredit Mitchell's testimony that his firing of Nastasi was consistent with his handling of previous employee accidents on the ground that Mitchell "had no independent recollection of the events recounted in [the Company's accident] records as to the reasons stated therein for the discharges." *Id.* at 10. Yet we are not persuaded that Mitchell's failure to recall the details of the hundreds of accident reports submitted by the Company and the General Counsel is sufficient to overcome the employer's uncontested evidence that Mitchell did the firing of Nastasi and treated him just like everyone else. Thus, we find no reasonable basis for the Board's rejection of the Company's unrefuted proposition that it would have fired Nastasi for his negligence even if he were not a union supporter.

### III. CONCLUSION

We find no merit in the Company's appellate claims with respect to DePolito, Brady, and the three laid-off employees, Battaglia, Cronk, and Demerest. The Company's petition for review is therefore denied and the Board's cross-petition for enforcement is granted with respect to these six employees.

In addition, the Board's unchallenged findings that the Company violated the Act by threatening to withhold a promised pay raise from Brady and by telling Nastasi that it would not allow the Union into its plant "under any circumstances" are affirmed.

However, we find that the Company met its burden under *Wright Line* of proving that it would have discharged Thomas Nastasi even if he had not supported the Union. Furthermore, we find no reasonable basis for the Board's rejection of the Company's evidence in this regard. The Company's petition for review is therefore granted insofar as it relates to the firing of Nastasi, and the Board's application for enforcement of its order with respect to this employee is accordingly denied.

*So ordered.*

SILBERMAN, Circuit Judge, *concurring:*

It is actually very rare, much more rare than our reported cases indicate, for this court to grant a petition for review of a Board order—or, indeed, any agency order—based on insufficient evidence. Our review, both in theory and in practice, is quite deferential. Since most of these sorts of cases are affirmed by unpublished orders and memoranda, whereas a grant of a petition (reversal of an agency) is always accompanied by a published opinion, practitioners—particularly those who practice before the Board—might gain the wrong impression. One issue in this multi-issue case, the Nastasi firing, fell into this virtual "purple cow" category.