# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

No. 23-1171                                   September Term, 2023
                                             FILED ON: MARCH 28, 2024

STARBUCKS CORPORATION, D/B/A STARBUCKS COFFEE COMPANY,
                    PETITIONER

v.

NATIONAL LABOR RELATIONS BOARD,
                    RESPONDENT

WORKERS UNITED, SERVICE EMPLOYEES INTERNATIONAL UNION,
                    INTERVENOR

Consolidated with 23-1188

On Petition for Review and Cross-Application
for Enforcement of an Order
of the National Labor Relations Board

Before: SRINIVASAN, *Chief Judge*, KATSAS* and CHILDS, *Circuit Judges*.

## <u>J U D G M E N T</u>

The present petition for review and cross-application for enforcement of a National Labor Relations Board ("the Board") order were presented to the court and briefed and argued by counsel. The Court has accorded the issues full consideration and determined that they do not warrant a published opinion. *See* D.C. Cir. R. 36(d).

For the reasons set out below, it is **ORDERED AND ADJUDGED** that the petition for review be denied and the cross-application for enforcement be granted.

\*       \*       \*

**I.**

---

\*       A separate dissenting statement by Circuit Judge Katsas is attached.

This appeal arises from several incidents occurring in January 2022 at Starbucks Corporation ("Starbucks") store #304 in Seattle involving employee Rachel Ybarra and manager Pam Mariscal. J.A. 363. On January 26, 2022, a customer who knew Ybarra asked if they[1] had any paraphernalia supporting the Starbucks employees' union drive. Ybarra responded that they had buttons, and the customer asked for some. Ybarra then left the coffee counter, went to a back room, and returned with a handful of union buttons for the customer. A few days later, an unnamed Starbucks employee from a different location visited Ybarra's store. Ybarra knew that the employee was organizing a union drive at the other store. While on a ten-minute break, Ybarra went to a back room and returned with a bag of union buttons for the other employee.

Mariscal witnessed these two interactions but was unaware that one involved a Starbucks employee. Some time later, Mariscal called Ybarra into the back of the store and instructed them to refrain from distributing buttons during working time on Starbucks property. J.A. 96–97. Ybarra responded that they were on a ten-minute break during one of the incidents, but Mariscal maintained that a break "is still considered a company paid-time, so it is not something you should be doing while on the clock." J.A. 99.

Acting on a series of unfair labor practice charges filed by the Starbucks employee union, Workers United, the Board's General Counsel issued a complaint alleging that Starbucks violated Section 8(a)(1)[2] of the National Labor Relations Act ("the Act"). 29 U.S.C. § 158(a)(1). The complaint alleged that Mariscal instructed an employee to refrain from distributing union paraphernalia at any time in the store, and that another manager threatened employees with discipline for testifying at a prior Board hearing on union representation, without first securing shift coverage.[3] J.A. 165.

The Board found that Starbucks had indeed violated Section 8(a)(1) of the Act by instructing Ybarra not to hand out buttons or pins while at work. As a remedy, the Board ordered Starbucks to cease and desist from the Section 8(a)(1) violations found, and to refrain from, in any like or related manner, interfering with, restraining, or coercing employees in the exercise of their

---

[1] Ybarra uses they/them pronouns, so we do too.

[2] Section 8(a)(1) makes it an "unfair labor practice" to "interfere with, restrain, or coerce employees in the exercise of" employees' Section 7 rights. 29 U.S.C. § 158(a)(1). Section 7 grants employees the right "to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection." *Id.* § 157.

[3] Our dissenting colleague finds significant that NLRB enforcement officials described the allegations against Starbucks as relating to customers. *Infra* at 6–7. But there is no reason to limit the Board's review strictly to the letter of the complaint because the broader conduct was fairly litigated before the Board. *Midwest Terminals of Toledo Int'l, Inc. v. NLRB*, 783 F. App'x 1, 5 (D.C. Cir. 2019). For example, although NLRB counsel objected to questions about distribution of union paraphernalia to coworkers as beyond the scope of the case, the administrative law judge overruled that objection. J.A. 66.

rights under the Act.   The Order also required Starbucks to post a remedial notice.   *See* J.A. 362, 370–71.

Starbucks petitioned this Court for review of the portion of the Board's decision arising from the conversations between Ybarra and Mariscal, and the Board cross-applied for enforcement.[4]   Starbucks challenges the Board's decision on two grounds: 1) substantial evidence and the Board's precedent do not support the Board's decision, and 2) the Board's remedial order is overbroad.   Neither argument is persuasive.

## II.

We "will not set aside a Board decision unless, 'reviewing the record as a whole, it appears that the Board's factual findings are not supported by substantial evidence or that the Board acted arbitrarily or otherwise erred in applying established law to the facts at issue.'"   *Perdue Farms, Inc., Cookin' Good Div. v. NLRB*, 144 F.3d 830, 834 (D.C. Cir. 1998) (quoting *Synergy Gas Corp. v. NLRB*, 19 F.3d 649, 651 (D.C. Cir. 1994)).   Under this standard of review, we are "highly deferential" to the Board's factual conclusions.   *Id.* (quoting *LCF, Inc. v. NLRB*, 129 F.3d 1276, 1281 (D.C. Cir. 1997)).   We also "give substantial deference to the inferences drawn by the NLRB from the facts," *Halle Enters., Inc. v. NLRB*, 247 F.3d 268, 271 (D.C. Cir. 2001) (quoting *Time Warner Cable v. NLRB*, 160 F.3d 1, 3 (D.C. Cir. 1998), and "we may not reject them simply because other reasonable inferences may also be drawn."   *Tasty Baking Co. v. NLRB*, 254 F.3d 114, 125 (D.C. Cir. 2001).   We will only overturn the Board's decision if the record is "so compelling that no reasonable factfinder" could have found as the Board did.   *Tchrs. Coll., Columbia Univ. v. NLRB*, 902 F.3d 296, 302 (D.C. Cir. 2018) (quoting *Pub. Serv. Co. of New Mexico v. NLRB*, 843 F.3d 999, 1004 (D.C. Cir. 2016)).

Here, the Board adopted the Administrative Law Judge's ("ALJ") findings that Starbucks violated Section 8(a)(1) of the Act because Mariscal's statements, taken together, prohibited all union button and pin distribution during paid break periods.   J.A. 362.   There is substantial evidence in the record to support this conclusion.   Mariscal testified before the Board that, after the second time she observed Ybarra handing out buttons, she told them that they "couldn't be handing out things to customers that was not, you know, their food or beverage while on work time."   J.A. 94.   Mariscal also told Ybarra that they should not be doing this while "on the clock" and that Ybarra could do that "outside of work" and "on their free time . . . to friends, family."   J.A. 96–97.   Ybarra testified that Mariscal told them that they "could not be distributing buttons while at work on Starbucks property" during "work time or company time," and that Ybarra understood the directive to constrain their behavior during "paid time."   J.A. 67.   When Ybarra explained to Mariscal that they were on a ten-minute break when distributing buttons during the second incident, Mariscal told them that they were still "on company time."   J.A. 77–78.   Mariscal confirmed Ybarra's testimony.   J.A. 99.   Ybarra testified that Mariscal's tone was

---

[4]      The Board is entitled to summary enforcement of the unchallenged portions of its order. *Flying Food Grp., Inc. v. NLRB*, 471 F.3d 178, 181 (D.C. Cir. 2006).   Starbucks does not contest that threatening employees with discipline for testifying at a Board hearing pursuant to subpoena without first securing shift coverage violates the Act.   Starbucks Br. 3, 10–11.

harsh, and that she wanted "Ybarra's conduct to stop and she impressed this upon Ybarra." *See* J.A. 369. Based on both witnesses' testimony, the ALJ reasonably concluded that Mariscal imposed an unlawfully broad ban on passing out union buttons and pins during company paid breaktime, J.A. 370, in violation of Section 8(a)(1). *See United Servs. Auto. Ass'n v. NLRB*, 387 F.3d 908, 914 (D.C. Cir. 2004) (holding that blanket bans on solicitation or distribution during all work time, even paid break time, are presumptively invalid) (citing *Our Way, Inc.*, 268 N.L.R.B. 394 (1983)). On review of the ALJ's decision, the Board concluded that a reasonable employee would have interpreted Mariscal's statements to impermissibly extend beyond the selling floor to the entire store, including nonpublic areas, like the back room. J.A. 362.

Starbucks' arguments to the contrary fail to overcome the demanding substantial evidence standard. Starbucks challenges the Board's order by arguing that Mariscal's statements were limited to handing out pins to customers, who are always on the selling floor, and do not have access to nonpublic areas such as the back room. Starbucks Br. 15, 27. Starbucks relies too heavily on Ybarra's answer to an ambiguous question on cross examination. While trying to discern whether Mariscal's statements to Ybarra were about company time or work time, Starbucks' counsel asked Ybarra, "[s]o you don't recall which of the -- which of the terms she used [company time or work time], but you understood that she was telling you that you couldn't hand out buttons -- buttons to a customer while on work time?" J.A. 67. Ybarra responded, "Correct." *Id.* Starbucks argues that by answering in the affirmative, Ybarra "conceded the focus was on buttons/pins being distributed *to customers* during worktime." Starbucks Br. 28. But Starbucks ignores the immediate follow-up question, which emphasized that the prior question was about "paid time," not customers, J.A. 67, and Ybarra testified that they understood Mariscal to explain that Ybarra "could not distribute items while at work on the clock." J.A. 68. Ybarra attested that Mariscal "did not say at that time that I could not talk to customers about the union." J.A. 69. Ybarra's interpretation was therefore not limited to customers. While it is true that Mariscal did mention "customers" when testifying about her discussion with Ybarra, she only referred to customers *once* throughout her entire description of the exchange. *See* J.A. 94–99, 116.[5] Even if Starbucks' interpretation is reasonable, that is all it is – an interpretation. We cannot displace the Board's reasonable interpretation just because Starbucks' understanding is reasonable too. *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951). Thus, the Board's conclusion that Mariscal's statement was not limited to interactions with customers is supported by substantial evidence.

Starbucks also argues unpersuasively that the Board failed to apply its own precedent allowing bans on solicitation or distribution on the selling floor of retail establishments where customers are likely to be, even when employees are on paid break time. *See, e.g.*, *Beth Israel Hosp. v. NLRB*, 437 U.S. 483, 506 (1978). For Starbucks to succeed on that argument, this Court would need to accept Starbucks' interpretation that Mariscal's statements could only be reasonably

---

[5] Our dissenting colleague says Mariscal's single reference to customers should carry through the rest of her testimony. *Infra* at 6. However, Mariscal never indicated that she meant for her single statement about "handing out things to customers" to be implied generally to her testimony.

understood as limited to customers. We have already rejected this view. Besides, the retail establishment cases are consistent with the Board's ultimate conclusion because they still prohibit blanket bans on solicitation in nonpublic areas of a retail establishment. *See, e.g.*, *Marriott Corp.*, 223 N.L.R.B. 978, 978 (1976) (finding that a ban on solicitation during "working hours" and "not limited to the customer or sales area of the restaurant" was overly broad and facially invalid because it precluded union activity on the employee's own time and in nonpublic areas of the restaurant). Here, the Board permissibly construed Mariscal's statement to cover all Starbucks' property, including nonpublic areas during the employee's paid break time.

Neither substantial evidence nor the Board's precedent undermine the Board's decision, so we will leave it undisturbed.

## III.

Finally, we do not reach Starbucks' argument that the Board's remedial order is overbroad, because these arguments were not raised initially before the Board. Precedent is clear that Section 10(e) of the Act bars any claim from judicial review that was not first raised before the Board. *Woelke & Romero Framing, Inc. v. NLRB*, 456 U.S. 645, 665 (1982). Starbucks did not raise a single remedial challenge in their Exceptions to the ALJ Decision and Brief in Support of Exceptions. *See* J.A. 326–60. Thus, any remedial challenge is not properly before us.

\* \* \*

For the foregoing reasons, we deny the petition for review and grant the cross-application for enforcement. Pursuant to D.C. Circuit Rule 36, this disposition will not be published. The Clerk is directed to withhold issuance of the mandate herein until seven days after resolution of any timely petition for rehearing or rehearing en banc. *See* Fed. R. App. P. 41(b); D.C. Cir. R. 41(a)(1).

**Per Curiam**

**FOR THE COURT:**
Mark J. Langer, Clerk

BY: /s/
Daniel J. Reidy
Deputy Clerk

5

KATSAS, *Circuit Judge*, dissenting: This case turns on what Pam Mariscal, the manager of a Starbucks coffee shop in Seattle, told barista Rachel Ybarra about Ybarra's distribution of union buttons at the store. According to the National Labor Relations Board, Mariscal instructed Ybarra not to distribute any materials during paid break periods, including to fellow employees in private areas of the store. If Mariscal said as much, then Starbucks committed an unfair labor practice by prohibiting an employee from distributing union materials "during non-work time and in non-work areas." *United Serv. Auto. Ass'n v. NLRB*, 387 F.3d 908, 914 (D.C. Cir. 2004). But it is not an unfair labor practice for employers to prohibit employees from distributing union or other materials *in public areas* of a retail establishment—*i.e.*, in areas open to *customers*—regardless of whether the employees are actively working or on paid breaks and regardless of to whom the employees are making the distributions. *See Beth Israel Hosp. v. NLRB*, 437 U.S. 483, 492–93 (1978). In my view, the conclusion that Mariscal's admonition extended beyond public areas of the coffee shop, to include distributions to co-workers in the private areas, is unsupported by substantial evidence. Accordingly, I would grant Starbucks's petition for review, set aside the finding of an unfair labor practice, and deny the NLRB's cross-application for enforcement.[6]

In administrative proceedings, Mariscal and Ybarra testified to the encounter in question. On direct examination, Mariscal testified that she told Ybarra not to be "handing out things *to customers*." J.A. 94 (emphasis added). My colleagues note that Mariscal did not repeat "to customers" in answering follow-up questions about the interaction. *Ante* at 4. But in response to those questions, Mariscal referred back to her initial testimony, without rehashing it each time. *See* J.A. 94–99, 116. Ybarra first testified that Mariscal prohibited handing out items while "at work and on company time," without further specifying whether the prohibition extended to coworkers in private areas of the store. *Id.* at 43. But on cross-examination, Ybarra acknowledged that Mariscal had not said "anything about distributing buttons to … coworkers." *Id.* at 66.

Context, which we must consider, *see Dover Energy, Inc. v. NLRB*, 818 F.3d 725, 731–33 (D.C. Cir. 2016), reinforces the conclusion that Mariscal warned Ybarra only about distributing items to customers. The disputed admonition arose after Mariscal had observed two incidents in public areas of the coffee shop. On the first occasion, Ybarra, while on duty, left the front counter to retrieve some union buttons and give them to a customer. J.A. 40–42, 92–94. Concerned by this, Mariscal texted her supervisor to report that Ybarra had been handing out buttons "to customers." *Id.* at 94, 116–17. Then, a few days later, Mariscal observed Ybarra handing out buttons to another individual who had come into the store dressed in plain clothes and appearing to be a customer. As it turned out, that individual worked at a different Starbucks store, but it is undisputed that Mariscal did not know this at the time and that the interaction occurred in the store's public area. *Id.* at 77–78, 101–03, 113–14.

Moreover, agency enforcement officials focused entirely on distribution to customers. The dispute began when the union charged Starbucks with reprimanding Ybarra for handing out a union button "to a customer" and with instructing Ybarra not to hand out buttons "to customers."

---

[6] Like my colleagues, I would enforce the uncontested portions of the order under review. *Ante* at 2 n.4.

6

J.A. 138. After investigating those allegations, the NLRB's Regional Director filed an administrative complaint. It too alleged that Mariscal had counselled Ybarra for giving out union buttons "to a customer" and had instructed Ybarra not to give out buttons "to customers." *Id.* at 165. And before the administrative law judge, counsel for the NLRB objected to cross-examination questions about distribution to "coworkers" as "[b]eyond the scope" of both Ybarra's direct testimony and the allegations in the case. *Id.* at 66. The ALJ did allow Ybarra to answer these questions, but only after noting that they were "going far afield" from Ybarra's direct testimony. *Id.* And as noted above, Ybarra answered by acknowledging that Mariscal had not said "anything about distributing buttons to … coworkers." *Id.*

The record does indicate that Mariscal warned Ybarra not to distribute pins while on paid breaks. The distinction between paid break time and work time arose because Ybarra, when confronted by Mariscal, explained that the second incident had occurred during a paid break. True enough, but the incident involved an encounter in the public area of the coffee shop, with an individual who was not a co-worker and appeared to be just another customer. The first encounter likewise involved a customer in the store's public area. In this context, Mariscal's admonition not to distribute buttons, whether on work time or paid break time, cannot reasonably be understood as covering exchanges with co-workers in the store's non-public areas.